# CHARLESTON.

WALDRON v. WALDRON *et al.*

Submitted November 19, 1913. Decided December 2, 1913.

1. LANDLORD AND TENANT—*Denial of Title—Estoppel.*
    In ejectment, it is unnecessary for the plaintiff to show good title to the land as against a defendant in possession under him as tenant. (p. 313).

2. SAME—*Estoppel to Dispute Landlord's Title—Husband and Wife.*
    Ordinarily, the law will not permit the husband to be tenant of another and the wife with whom he is living on the land leased by him to be claiming it adversely to the lessor at the same time. She will be presumed to know of the tenancy and to recognize title in the lessor, if she does not repudiate it by notice to him. (p. 314).

3. TRIAL—*Objection to Evidence—Waiver.*

    If, during the progress of a trial, the court properly reserves decision as to the admissibility of evidence produced before the jury and the objector does not again bring his objection to the court's attention and obtain a ruling thereon, the objection will be treated as waived.   (p. 316).

4. APPEAL AND ERROR—*Harmless Error—Conclusion of Witness.*

    A statement of inference, conclusion or judgment accompanied by the facts on which it is based is usually harmless since the jury can judge of its probative value.   (p. 317).

5. TRIAL—*Offer of Proof—Exclusion.*

    Where a party offers in evidence a writing and at the same time discloses that he has in his possession a separate writing which accompanies the one offered, necessary to a full understanding of the latter, it is not error to exclude the former if the latter is not put in evidence with it.   (p. 318).

Error to Circuit Court, McDowell County.

Action by John W. Waldron against A. C. Waldron and others.   Judgment for plaintiff, and defendants bring error.

                                    *Affirmed.*

*Cook, Litz & Howard* and *Anderson, Strother & Hughes,* for plaintiffs in error.

*Sanders & Crockett* and *Strother, Taylor & Taylor,* for defendant in error.

ROBINSON, JUDGE:

    In this ejectment case, plaintiff, through the verdict of a jury, has judgment against defendants for the boundary of one hundred acres described in the declaration. Defendants seek reversal, assigning many errors.

    Plaintiff's theory of recovery was that defendants, A. C. Waldron and his wife Belle Waldron, were in possession of the land by virtue of a verbal contract of tenancy, made by plaintiff with A. C. Waldron about the time plaintiff purchased the land at a sale under a deed of trust, and that he was entitled to oust them regardless of any question of his title to the land. Defendants denied the lease, or contract of tenancy, and claimed that the land was not within that purchased by plaintiff at the trustee's sale. Moreover, they contended that even if the contract of tenancy between plain-

tiff and A. C. Waldron was established, still it could not affect the right of Belle Waldron, the wife, who claimed that she had no knowledge of the contract of tenancy, but that she had all along through the period of the occupancy of defendants held the land as her own, so that title had vested in her by adverse possession.

That A. C. Waldron contracted with plaintiff to hold the land as plaintiff's tenant is a fact which the jury were certainly warranted in finding from the evidence. It seems plain that the jury were justified in finding that plaintiff after his purchase at the trustee's sale claimed that his purchase took in the house wherein and the land whereon A. C. Waldron contracted with plaintiff to be the latter's tenant. It is true that the bounds of the land were not at the time of the contract of tenancy known and defined to plaintiff. But that can not matter, for, in a view which the jury could rightly take, A. C. Waldron contracted with plaintiff to be the latter's tenant on the undefined claim of land since determined by survey and the trustee's deed to be the one hundred acres in controversy. Defendants say that plaintiff meant only to lease to A. C. Waldron what plaintiff had purchased at the trustee's sale, and that an examination of the title which the trustee had power to sell shows that the trustee could not pass title to the land in controversy—that it was outside of what had been vested in the trustee by the deed of trust. The evidence, however, warrants the conclusion that plaintiff meant to make A. C. Waldron tenant of the land in controversy, and that the latter accepted tenancy thereon, though it may be that the same is outside of what plaintiff actually purchased at the trustee's sale. We do not decide whether the land in controversy was or was not embraced in that sale. It is unnecessary for that fact to be decided here. Certain it is, the jury could say from the evidence that plaintiff believed he bought the land whereon he located A. C. Waldron as his tenant. Quite as certain it is that they could say from the evidence that A. C. Waldron lived on the land in controversy as the tenant of plaintiff, whether palintiff's purchase at the trustee's sale included it or not. They could find that plaintiff leased to A. C. Waldron at a time when the former claimed by the purchase at the trustee's sale; that

the exact lines of plaintiff's claim were not then ascertained; that plaintiff located A. C. Waldron as tenant on what he claimed by the purchase; that a subsequent survey and a deed from the trustee make what plaintiff claimed to purchase to include all the tract in controversy; and that, under the tenancy, A. C. Waldron has been in possession of all that tract, since he leased all that plaintiff claimed. It matters not, as against the tenant, whether plaintiff took good title by the trustee's sale. It was unnecessary for plaintiff to show good title to the land, for the tenant could not deny the title of his landlord. This proposition certainly needs no citation of authorities to support it.

Defendants, however, maintain that the contract of tenancy can not apply to Belle Waldron, the wife of A. C. Waldron; that she claimed the land in controversy prior to the contract of tenancy and has lived thereon under her claim without knowledge of the contract of tenancy for a period sufficiently long to vest title in her as against plaintiff, by adverse possession. Of course, A. C. Waldron could not show such title as against his landlord if it existed. Can Belle Waldron, his wife, show it? We are quite sure that she can not under the facts and circumstances appearing. The wife simply says she claimed the land, beginning at a time which from other evidence appears to have been shortly prior to the lease. She nowhere shows what such claim was based on—what distinct separate estate she had in it. She nowhere shows that plaintiff had notice of a claim to the land on her part, before plaintiff dealt with her husband, constituting him tenant of the premises. Indeed the whole of the evidence must be taken as showing that the only right which Belle Waldron asserts is the bare fact that she has been living on the land as a wife with her husband for fifteen years, dating from about the time of the husband's making the contract of tenancy with plaintiff. As a matter of law, the slight evidence relied on by her in support of a separate claim to the land may be ignored. Her claim, supported no more than it is, the law will not recognize. All the time that she alleges to have claimed she was living on the land with her husband, who, she admits, was acting fully and with authority as to all matters in relation to the land. He was the head of the family. They were in the close con-

fidential relation of husband and wife. It is not within reason to suppose that throughout a long period of tenancy on his part he would keep the fact of tenancy concealed from his wife, so that she could not repudiate the same. They were in mutual conjugal relation. We must judge them accordingly. "There could be but one actual seizen or occupancy of the premises at the same time, and the law will attribute that occupancy to the husband, and not to his wife." *Meier* v. *Meier,* 105 Mo. 431. Ordinarily, the law will not permit the husband to be tenant of another and the wife with whom he is living on the very land leased by him to be claiming it adversely to the lessor at the same time. Though the deed is not introduced in evidence, it seems that the wife claims the land by a deed from her husband, who, as far as the record shows, never had any right therein except as tenant. He made such deed to his wife about the time that plaintiff purchased at the trustee's sale— about the time he leased the land from plaintiff. If she had bona fide separate claim, why this deed? She took no title thereby; the grantor had none to give her. It may be that her claim and that this deed antedated the contract of tenancy. The evidence does not clearly disclose. Nor does it matter. Similarly it has been held: "Where a trespasser conveys the property to his wife and they continue to reside upon the premises with their children, her possession is subordinate to that of her husband since she takes no title by such conveyance, and his subsequent taking of a lease from the true owner is binding upon the wife as far as it operates as a recognition of the true title." *C. & A. R. R. Co.* v. *Keegan,* 185 Ill. 70. Belle Waldron must be considered a tenant of plaintiff with her husband. It must be assumed that she was there merely as his wife, under the tenancy which he contracted—that she was there in recognition of title in plaintiff. Since no other relation of Belle Waldron is proved by such facts and circumstances as would take her out of the ordinary relation, we must say that she also was in possession with her husband as tenant. She can therefore no more deny the title of plaintiff—the landlord—than can her husband. To view the matter otherwise would permit the husband, who is presumed in all reason to have knowledge of the wife's claim, to keep the same secret from plaintiff, make a contract of

tenancy with the latter, keep the wife seemingly as a wife on the land all the time plaintiff by the contract of tenancy is lulled into inactivity as to the wife's claim, and then, when the statutory period has expired, would permit the wife to hold, by saying that she had not been on the land as a wife at all, but as an adverse claimant of the land. The law will not allow the wife to have the benefit of any such fraud. She will be presumed to know what her husband knew, to recognize the title in the lessor, and to be bound by the tenancy, if she does not repudiate it by notice to the lessor. That on which defendants rely as notice to plaintiff of Belle Waldron's claim is by no means sufficient. The jury were quite justified in finding that he never at any time had notice of claim on her part.

That which we have written in the preceding paragraphs virtually disposes of the several assignments of error in relation to the giving and the refusing of instructions to the jury, as well as the assignments that the verdict is not supported by the evidence and that the court should have set aside the same and awarded a new trial. All these assignments must be overruled. And in this connection we may say that the court did not abuse the discretion which it had in refusing the special interrogatories asked by defendants.

Plaintiff introduced the deed made to him by the trustee at whose sale he purchased, and a deed made by the grantor and the beneficiary in the deed of trust under which the trustee's sale was made, the latter deed being in fact merely confirmatory of the former. These deeds were made long after the sale by the trustee. They recite that plaintiff had been in possession of the land from the date of the trustee's sale. Defendants submit that they were prejudiced by the introduction of the deeds containing these recitals—that the recitals tended to prove the tenancy as against defendants—that defendants were not bound by the recitals since they were not parties to the deeds. As to one of these deeds the court expressly reserved decision as to admitting in evidence that portion thereof which contained the recital as to possession since the trustee's sale, and from the proceedings as given in the record it would seem that the same ruling was intended as to the similar recital in the other deed. But thereafter no

further decision on the point was sought by defendants. They did not press their objections. They should have required a ruling on the point before the case went to the jury. Defendants not having done so, in fairness to the trial court we must hold that they waived the objection made. That the court meant to rule on the point is clear. That it failed to do so is the fault of defendants in not reminding the court of the reserved decision as to their objection. A trial court engrossed in the many matters and points pertaining to a case of the magnitude of this one, must in reason be aided. If a party who has made an objection permits it to be forgotten, a waiver should be chargeable to the party. Error in such instance should not be chargeable to the court, which would bring a reversal on a point that presumably would have been eliminated by a correct ruling if the matter had been brought to the court's attention. *Hargreaves* v. *Kimberly,* 26 W. Va. 787; *Summers* v. *Darne,* 31 Grat. 791. At the time the court reserved its decision on the objection to the introduction of the recitals in the deed, it was proper so to reserve decision. The trial of the case was just beginning. The court could not then know that defendants would not later in some way be connected with a recognition of the recitals. The court was at least entitled to time in which to get an understanding of the case and to be able to rule with proper view. Moreover, these recitals having remained in the case in the somewhat qualified way that they did, even considering their admission as error, we would not in this case reverse for the same. For, as to the possession of the land by plaintiff through defendants as his tenants, the facts and circumstances shown by the evidence apart from these recitals are so weighty and so preponderating for plaintiff, so forcefully corroborated by the documentary affidavit of A. C. Waldron in a suit against him by a stranger for possession of the very house and some of the land here involved, that a verdict other than for plaintiff would undoubtedly be contrary to the evidence and would have to be set aside.

The assignment that the court erred in permitting plaintiff to say in his testimony that, at the time plaintiff was having a survey of the land made, A. C. Waldron recognized that he was tenant under plaintiff, is answered by the second point of

the syllabus in *Neeley* v. *Town of Cameron,* 71 W. Va. 144, and calls for no particular discussion here. A statement of inference, conclusion or judgment accompanied by the facts on which it is based is usually harmless since the jury can judge of its probative value.

Defendants tendered in evidence an unexecuted deed which plaintiff had mailed to them and asked that they execute and thereby convey the land to him. This deed was accompanied by a letter from plaintiff which explained his purpose in seeking such a conveyance. The letter also was tendered in evidence by defendants, but was immediately withdrawn. The court expressly ruled that the deed could not be admitted unless the letter also was admitted. Defendants did not thereafter seek to have the deed admitted with the letter. It appears that the court would have admitted the deed and letter together, as evidencing a single transaction. Only as accompanied by the letter was the unexecuted deed admissible. Perhaps the fact that plaintiff asked defendants to convey the land to him would have tended to rebut plaintiff's testimony that defendants were his tenants on the land. But defendants could not rightly have the benefit of the favorable part of the transaction by which plaintiff sought a conveyance from them, and at the same time reserve the other part of the transaction which explained and qualified his purpose in seeking the conveyance. The letter was admittedly in the hands of defendants. It was their duty to introduce it, if they wanted the deed to go in. "Where a writing offered refers to another writing, the latter should also be put in at the same time, provided the reference is such as to make it probable that the latter is requisite to a full understanding of the effect of the former. The same principle would apply to another writing, not expressly referred to, but necessary by the nature of the documents to a proper understanding of the one offered." 3 Wigmore on Evidence, sec. 2104.

A thorough examination and review of the record, aided by the most excellent briefs of counsel on both sides, leads us to the conclusion that the judgment must be affirmed.

*Affirmed.*