# CHARLESTON.

## STATE *v*. EDGAR PARSONS.

Submitted February 7, 1922.   Decided February 14, 1922.

1.  CRIMINAL LAW—*An Instruction Prescribing Limit of Jury's Findings, Naming Possible Verdicts, Held Not Error.*

    In a trial on an indictment for grand larceny, an instruction prescribing the latitude the jury has, as to findings under it, naming the possible verdicts, without indication of any particular verdict as the proper one to be returned and without statement of the requisites of any particular finding, may properly be given.   (p. 311).

    90 W. Va.

2. SAME—*In an Instruction on Grand and Petit Larceny in Three Parts, Including Belief Beyond a Reasonable Doubt, in the First Two, it Need not be Repeated in the Third.*

In an instruction consisting of three paragraphs, respectively stating the requisites of conviction of grand larceny and petit larceny, including in each case belief of guilt beyond reasonable doubt, and acquittal, it is not necessary to insert the requirement of such belief in the third paragraph. (p. 311).

3. SAME—*Instructions on Jury's Province as to Credibility of Witnesses, Not According Arbitrary Power, Are Unobjectionable.*

Instructions on the subject of the jury's province respecting the credibility of witnesses, which state in the usual form the elements that may be considered as bearing upon it and do not accord to the jury any arbitrary power respecting the subject, are unobjectionable and may properly be given. (p. 312).

4. SAME—*Rulings on Instructions, Not Excepted to Are Not Proper Grounds of Complaint, But, if a New Trial is Awarded, They May be Considered.*

Rulings on instructions not excepted to are not proper ground of complaint in the appellate court, but, if a new trial is awarded by it for errors in other rulings, the propriety of such instructions may be considered and their status defined for the purposes of a new trial. (p. 312).

5. SAME—*Error to Give a Misleading Instruction on the Subject of Alibi.*

In a trial on an indictment for larceny, in which the accused sets up and relies upon an alibi, by way of defense, it is reversible error to give an instruction saying: "The burden rests upon the State to make out its case against the accused to the exclusnon of a reasonable doubt, but where the accused relies upon or attempts to prove an alibi in his defense, the burden of proving the said alibi rests upon him;" even though another instruction is given, telling the jury the State, to prevail, must prove to their satisfaction beyond a reasonable doubt, the guilt of the accused, and that they should acquit him, in the event of its failure to do so. (p. 312).

6. SAME—*Error to Refuse Properly Drawn Instruction and Give Another in Lieu Thereof.*

Though it may not be reversible error to refuse an instruction properly drawn and appropriate in all respects, and give another covering its subject matter in more general terms, as

a matter of practice, it is restrictive of the liberty of action the law accords to a litigant, and should not be resorted to. (p. 313).

7.  SAME—*Instruction Requiring Reconciling of Evidence with Accused's Innocence, if Possible, Held Properly Refused.*

It is not error to refuse an instruction in a criminal case, which, if given, would tell the jury they should reconcile the evidence with the innocence of the accused, if they can, since such an instruction would tend to mislead them. (p. 314)).

8.  SAME—*Exclusion of Merely Relevant and Unimportant Facts, Which are Immaterial, is Not Error.*

It is not reversible error in a trial, to exclude evidence of merely relevant and unimportant facts, if they are immaterial. (p. 314).

9.  SAME—*Discretionary Powers of Trial Court, as to Order of Evidence and to Repetition of Statements Recognized, and Not Disturbed.*

The appellate court recognizes discretionary power in the trial court, as to the order of introduction of evidence, and repetition of statements, and will not disturb the exercise thereof.      (p. 314).

Error to Circuit Court, Wood County.

Edgar Parsons was convicted of the larceny of an automobile, and he brings error.

*Reversed and remanded.*

*Reese Blizzard, John F. Laird,* and *C. M. Hanna,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General, *C. N. Matheny,* Prosecuting Attorney, and *Robert McDougle,* Assistant Prosecuting Attorney, for the State.

POFFENBARGER, PRESIDENT:

Convicted of the larceny of an automobile and sentenced to three years imprisonment in the penitentiary, the plaintiff in error seeks a new trial.

The two principal questions raised in the trial were the identity of the accused, as the man who took the car, affirmed by the testimony of the prosecuting witness, and an alibi asserted by the accused and several other witnesses, in their tes-

timony. While the prosecuting witness was calling on a young lady and his car standing in Twenty-fourth Street of the City of Parkersburg, in front of the house, some persons stopped another car in front of it, connected the two cars with a rope and started to drive away, the front car pulling the other. Lyons, the owner of the stolen car, hearing the other car stop, came to the window, saw what was transpiring, gave chase, jumped on the running board of his car and engaged in fistic combat with the man he found in it. He swears that, in further transactions with the man on that occasion, resulting in his recaption of the car, and escape of the thief, he obtained a perfect view of the man and had known him for several years. His testimony on the question of identity of the accused is direct, positive, emphatic and grounded upon definite statements of fact, which, if true, leave no room for doubt as to his opportunity to know whereof he spoke. As to his presence at her home, the removal of the car, discovery and recaption of it, the young lady corroborates him. Two city officers say he reported the incident promptly and brought to police headquarters a piece of rope with which he said the thieves had been pulling his car.

On the other hand, the accused positively denies, on his part, all connection with the car, knowledge of its having been stolen or molested and his presence on the street in which it is alleged to have been taken. He and his brother both swear emphatically that, at about the time of the theft, they were either at the home of two ladies on another street some distance way, on their way home by a route that did not include the street on which the car was stolen, or at the home of themselves and their parents. Lyons and the girl he was calling an say the car was taken "right around midnight" of Saturday, January 9, 1921. The accused, his brother, Mrs. Hopkins and Marie Hopkins, all say the two brothers left the Hopkins residence just about midnight. The brothers swear that, on leaving the Hopkins residence, they drove to their home, in a Dodge Brothers car belonging to the brother of the accused, meeting Earl Wolfe on Murdock Avenue, in his car in company with Harry Smith and Harry Felgar. After putting their car in a garage, they joined Wolfe and his

friends and rode a block or two towards home in his car. In this, they are corroborated, by Wolfe and Smith, and they are all in substantial agreement as to the time at which the Parsons boys went home. Further confirmation of their evidence, as to the time of their arrival, is found in the testimony of their mother.

There is a discrepancy in the testimony, as to the circumstances of their visit to the Hopkins residence. Edgar said he went there by street car and arrived about 8 o'clock. Mrs. Hopkins and Marie said he came alone and arrived at about that hour. All three swear Ernest Parsons, his brother, came in his car at about 10 o'clock. But he, agreeing with them as to the time of his arrival, swore Edgar and the two Hopkins girls came with him, in his car. In rebuttal, Daugherty, a constable, testified that he had seen both boys in an Overland car at East Street and at 25th Street and Dudley Road, at times and under circumstances that do not harmonize with their testimony. He also swore the machine carried an Ohio license, giving its number, 39727. They contradicted him, saying their car was a Dodge and carried a West Virginia license, the number of which, for 1920, was 48,982. They were not able to say whether they had then put on the 1921 number.

For the most part, the complaints go to the giving and refusal of instructions and we are of the opinion that some of them are well founded.

No error is perceived in the giving of State's instruction No. 1, merely designating the latitude the jury had, as to findings under the indictment, saying it was possible to return any one of three verdicts and naming them. It contained no indication of any particular verdict they could or should find, and did not state the requisites of any of the verdicts named. Instructions of that kind have been expressly approved. *State* v. *Prater*, 52 W. Va. 132; *State* v. *Lutz*, 88 W. Va. 502.

The complaint of State's instruction No. 2, telling the jury they could not convict of grand larceny, nor of petit lareny, unless they should believe beyond reasonable doubt that the accused stole the automobile, and that, in the first case, it was of the value of more than $20.00, and, in the other, less than

$20.00, and that, if they were not convinced that he stole it, they should return a verdict of not guilty, is that it failed to annex the phrase, "beyond reasonable doubt," to the word "convinced." That phrase having been inserted in the paragraphs stating the requisites of conviction of the only offenses charged, inclusion thereof in the last paragraph would have been mere repetition. Besides, that paragraph pertained to acquittal of which belief beyond reasonable doubt is not an element. The only inaccuracy observed in the instruction is its assumption that a value of more than $20.00 is a requisite of grand larceny, and that is corrected in State's instruction No. 3, in which no error is perceived. Of instruction No. 4, given for the State, no specific complaint is made and no fault is found in it.

Condemnation of State's instructions Nos. 7 and 8, stating the jury's recognized province respecting the credibility of witnesses and conflict in oral evidence, is sought in the observations made in *State* v. *McCausland,* 82 W. Va. 525. Neither of them gave the jury any authority to act arbitrarily, respecting the evidence of any witness. The vice of the instruction disapproved in *State* v. *McCausland* was carefully avoided in both. In No. 7, the jury were explicitly told to give to the evidence of every witness such credit as they believed it to be entitled to, and, in No. 8, they were advised of their right to determine which witnesses were "more worthy of credit and to give credit accordingly."

Though no exceptions to the giving of State's instructions Nos. 2 and 7 seem to have been taken, we pass upon them in view of the award of a new trial. They could not be considered here as ground for setting aside the verdict. Awarding a new trial for errors in other rulings and seeing them in the record, we can pass upon the question of their appropriateness, for the purposes of a new trial.

We are unable, however, to approve the action of the court in giving State's instruction No. 5 reading as follows: "The Court instructs the jury that the burden rests upon the State to make out its case against the accused to the exclusion of a reasonable doubt, but where the accused relies upon or attempts to prove an alibi in his defense, the burden rests upon

him." The court evidently deemed it to have been modified or explained by instruction A, telling the jury that before they could convict, the State must have proved to their satis-faction beyond a reasonable doubt the prisoner's guilt of the offense charged, and that they should acquit him, if the State failed to make out such a case in the evidence. Both seem to have been given in reliance upon *Thompson* v. *Com.,* as reported in 88 Va. 45, in which two similar instructions were approved. But instruction A does not follow the language of the supposed qualifying instruction in Thompson's Case, which required the Commonwealth to "prove everything essential to the establishment of the charge in the indictment." That included the presence of the accused at the time and place of the larceny. But we are not prepared to say the ruling would meet with our approval, if instruction A had strictly followed the one in Thompson's Case. The disjunctive "but" used in instruction No. 5 imports an exception to the general rule requiring proof of guilt beyond reasonable doubt and duty on the part of the accused to establish his alibi beyond reasonable doubt, and the other instruction could well be taken by the jury as being subject to the same exception, for it is substantially a repetition of the first part of No. 5. There is no such exception and the burden of proof and degree of proof necessary to conviction ought not to be confused in an instruction in such manner as to indicate its existence. While the accused carries the burden of proof of an alibi, his evidence in support thereof requires an acquittal, if it creates a reasonable doubt in the minds of the jury, of his presence at the time and place of the offense. *State* v. *Lowery,* 42 W. Va. 205. This plain and simple statement of the law should be given to the jury, in any instruction stating together the law of reasonable doubt and the burden of proof of an alibi. Notwithstanding the giving of instruction A in connection with it, instruction No. 5 was so uncertain and indefinite that the jury may have been misled by it, to the prejudice of the accused.

It is unnecessary to determine whether the refusal of instruction No. 1 requested by the accused and having the same subject matter as instruction A, but so drawn as to require

proof by the State, beyond reasonable doubt, of all of the material allegations of the indictment, was an erroneous ruling, or, if so, whether it would be ground for a new trial. On the new trial, it should be given. It correctly states the law and it is somewhat broader in its scope than instruction A. A disconnected and meaningless phrase evidently inserted in it by accident can be ignored as being surplusage. If left in, it cannot mislead, but it should be eliminated on the giving of the instruction in the new trial. Instruction No. 2 requested by the accused and making it the duty of the jury to reconcile the evidence with his innocense, if possible, was properly refused. It was calculated to mislead the jury. *Barker* v. *Com.*, 90 Va. 820.

There was manifest discretion in the trial court, to permit the prosecuting witness to answer an emphatic question requiring him to say who had taken his car. An answer to the question may have been deemed necessary to clearness of the witness's testimony. Whether he was preparing to go home when he noticed molestation of his car was clearly immaterial, wherefore it was not a proper subject of cross-examination.

There was no prejudicial error, if any at all, in the elimination of the answer of the accused, to a clearly leading question as to the time at which he went to bed and whether he remained there all night, nor in the ruling out of a question as to the time at which he went to bed. He had already stated that he remained at home after his arrival there, and his mother and brother were permitted to testify that he had gone to bed and remained there. As he was permitted to say he had not been out of Parkersburg for more than a year, a period covering the alleged theft and his arrest, the error, if any, in the rejection of the previous question seeking the same information, was not prejudicial. To whom the witness, Daugherty, first stated he had seen the Parsons boys at two different places, on the night of the alleged theft, was immaterial, wherefore the court properly rejected a question designed to elicit such information.

For the error in the giving of State's instruction No. 5, the

judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*