# CHARLESTON.

STATE v. DEXTER FRIEND.

(No. 5460)

Submitted October 13, 1925.   Decided October 20, 1925.

1. CRIMINAL LAW—*In Absence of Ruling on Motion to Strike Out Evidence and Objection or Exception, Appellate Court Will Not Consider Assignment of Error Based on Inadmissibility of Such Evidence.*

   Where there is a motion to strike out the evidence of a witness, and no ruling is made on the motion, and no objection or exception taken, the appellate court will not consider an assignment of error based on the inadmissibility of the evidence.   (p. 186.)

   (Criminal Law, 17 C. J. §§ 3331, 3336½, 3342.)

2. SAME—*General Motion to Strike Out Answers of Witnesses Should be Overruled, if Portions Admissible.*

   A general motion to strike out the answers of a witness should be overruled, where some portions of the answers are admissible. The motion to be effective should be confined to the portions claimed to be inadmissible.   (p. 186.)

   (Criminal Law, 16 C. J. § 2209.)

3. RAPE—*Testimony of Physician Who Examined Prosecutrix One and One-Half Months After Offense as to Physical Condition Held Admissible.*

In a trial of an indictment for statutory rape in which the prosecutrix testifies that she has not had carnal intercourse with any male except with the defendant at the time when the crime was alleged to have been committed, testimony of a physician that he made an examination of the genital organs of the prosecutrix one and one-half months after the alleged commission of the offense, and found her hymen ruptured and the vagina extended, is admissible; the time of examination not being too remote from the date of the alleged offense.    (p. 186.)

(Rape, 33 Cyc. p. 1472.)

4. CRIMINAL LAW—*Physician Qualified as Expert May Express Opinion of Ability of Accused to Copulate.*

A physician who has qualified as an expert and who has formed an opinion from a physical examination of the genital organs of a male then afflicted with orchitis, regarding his ability or inability to copulate, may express that opinion in his evidence to the jury.    (p. 188.)

(Criminal Law, 16 C. J. § 1532.)

5. SAME—RAPE—WITNESSES—*Testimony of Accused's Wife That He Could Not Copulate With Her Held Competent, and Its Exclusion Reversible Error.*

The evidence of the wife of such male so afflicted, to the effect that he has not and could not copulate with her although they slept together, for more than a year, is competent on the issue of his guilt of statutory rape alleged to have been committed within that time; and to refuse to admit her testimony in that regard is reversible error.    (p. 189.)

(Criminal Law, 17 C. J. § 3679; Rape, 33 Cyc. p. 1474.)

6. RAPE—On *Evidence of Impotency, Refusal to Instruct Jury to Consider Probability of Lack of Desire for Sexual Intercourse Held Error.*

Where evidence has gone to the jury in a trial for rape, sufficient to show that the accused at the time of the alleged offense was afflicted with a malady rendering him impotent and not able to copulate, it is error to refuse an instruction telling the jury they may take into consideration the probability of his lack of desire for sexual intercourse and give it such weight as, under the evidence, they may think proper. (p. 190.)

(Rape, 33 Cyc. p. 1502.)

7. CRIMINAL LAW—*On Evidence of Alibi, Refusal of Instruction to Acquit, if Alibi Established, Held Error.*

Where one of the defenses to a crime the commission of which requires the personal presence of the accused, is an alibi, and the evidence tends to establish such defense, it is error to refuse an instruction calling the attention of the jury to such defense, and telling them that if they believe such alibi has been established they should find him not guilty; although the usual instruction on reasonable doubt of the guilt of the accused is given.   (p. 191.)

(Criminal Law, 16 C. J. § 2375.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Preston County.

· Dexter Friend was convicted of statutory rape, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Mitchell & Snyder*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *R. A. Blessing*, Assistant Attorney General, for the State.

LIVELY, PRESIDENT: ·

For the crime of statutory rape committed upon Margaret Sisler, a female 13 years of age, defendant was convicted, and on March 25, 1925, was sentenced to 10 years confinement in the penitentiary.   On this writ numerous errors are assigned for reversal.

The prosecutrix lived with her mother and step-father within about two miles of Terra Alta, in Preston County. Defendant was about 39 years of age, was married and the father of three children, the youngest being five years of age, and resided in Maryland a short distance from the West Virginia boundary line.   About the time of the alleged offense he was moving or had moved his family and personal property from Maryland into Preston County.   The alleged offense, according to the State's evidence, occurred between three and four o'clock on the afternoon of November 22, 1924.

It appears that three visitors, a woman and two men, came
to the home of Sam Lewis, the step-father of the prosecutrix,
Margaret Sisler, one afternoon in November, 1924, which date
these visitors, Lewis and his wife, the prosecutrix and her
eleven-year-old brother Claude, fixed as Nov. 21, 1924. Later,
about supper time, defendant and Harry Pickford arrived
in a Ford car. All of them lodged with Lewis that night, and
the next morning they all left. Lewis took his car and ac-
companied by his wife drove the woman visitor and her two
male companions to Terra Alta, thence to Albright and thence
to another point where there was a public sale. Defendant
and Pickford also went to Terra Alta in their car, arriving
there at the same time Lewis and his party arrived. Marga-
ret Sisler and her brother Claude, remained at the Lewis
residence. She says that about three o'clock that day de-
fendant came to the house and gave her little brother Claude
some money and sent him to get cider at some neighbor's
house, a distance of a half a mile or more away. The boy
went as directed, returning from the first neighbor's house
without cider. He was then sent to another house about the
same distance away and returned empty handed. He then
made another trip to a house perhaps further away and
brought back some cider, when defendant gave him twenty
cents. While the boy was gone, it does not appear on which
trip, she says defendant took her from the dining-room into
a bed room and had sexual intercourse with her. She does
not say that he forced her. She says he gave her one dollar
for "the thing he done". When the boy returned with the
cider defendant drank some of it and went away, telling
both to say nothing about his visit. The boy corroborates
the girl in the particulars that defendant came to the house
and sent him away for cider, and left after it had been ob-
tained. The prosecutrix says that no other person ever had
sexual intercourse with her. The mother and step-father re-
turned from their auto trip about eight or nine o'clock that
evening. The next morning the girl told her mother what
had happened the day before. In the latter part of Decem-
ber following, the mother accompanied by the girl went to a
justice of the peace and made the complaint. Defendant was

arrested and placed in jail. About the middle of January, 1925, the girl's sexual organs were examined by Dr. Harmon, and his evidence will be later detailed. The boy Claude is corroborated by persons at the houses which he visited for cider, to the effect that he came to the houses for cider some day in November.

The defense, in part, consisted of an alibi. Defendant admitted that he and Pickford lodged with Lewis some day in November, and left the next morning, as detailed. He and Pickford both say they went from there to Terra Alta, thence to Oakland, Maryland, and that they were there or in that neighborhood all day in each other's company and in the company of others until ten o'clock that night. Other witnesses say that on the 22nd of November, 1924 (the day when the offense is alleged to have been committed), defendant was actually moving his household effects and stock from Maryland to Preston County. Cumulative of this testimony is the affidavit and evidence of two witnesses that they assisted in the moving, and that their employer made a charge therefor on the day the work was done, namely, the 22nd of November. These affidavits and evidence of these two witnesses was tendered as after-discovered evidence, on a motion for new trial. The material substance is that there was documentary evidence (a book charge for hauling) made the day the work was done.

In addition to the alibi, defendant introduced evidence of physicians who had examined him, tending to show that by reason of orchitis, resulting from an attack of mumps in the year 1921, he was incapable of sexual intercourse. Evidence of many witnesses was taken to impeach the prosecutrix's reputation for truth and veracity; also evidence that she had admitted to others that she had had sexual intercourse with boys who lived in the neighborhood. On the other hand, evidence was introduced by the State in rebuttal, tending to establish the prosecutrix's reputation for truth.

As before stated, there are many assignments of error based on the introduction and refusal of evidence, the refusal to give instructions, on after-discovered evidence, and upon a prejudicial separation of the jury while the case was being

tried. We will not discuss all of them at length; those that are important will be considered.

The first point is that a card or drawing was introduced by Sam Lewis to explain his evidence, which purported to show the location of his house, the roads in the vicinity and the location of his neighbors' houses. It was not shown that the map or drawing was a correct one nor who made it. The argument is that it did not have on it one of the roads leading to Terra Alta, and it was objected to as evidence. The map, card, or drawing is not in the record. No doubt it was a crude paper, but as there was no dispute about the location of the roads and various houses, including the distances between them, we cannot see that the error, if any, had any bearing upon the issue. It was used by the witness to give to the jury a fuller understanding of a matter unimportant in itself. We do not see prejudicial error. It would have been better to have properly authenticated the drawing and its correctness by the maker.

The next point is that it was error to permit the mother to testify, in substance, what the prosecutrix told her on the following morning. After objections to the numerous questions propounded to her by the State's attorney and sustained by the court, the questions were asked: "What did you learn had happened?" Ans. "I learned he come and insulted her." Q. "What do you mean by insulted her?" Ans. "Sexual intercourse with her." Q. "Did you learn when that occurred?" Ans. "Yes, sir." Q. "When?" Ans. "On the day before; she told me." Defendant's counsel then moved the court to strike out the answers. The record is silent as to what action the court took. The evidence stayed in. Error is based on the answers which plainly tell the jury that the daughter told the mother that Dexter Friend, the defendant, had, on the day before, committed the crime; and it is reasonably clear that the pronoun "he" referred to defendant. She could have meant no other person. The general rule is that a witness for the State may state that the prosecutrix made complaint (after the commission of the offense and not as a part of the *res gestae*), but it is not permissible for the witness to state the person whom she impli-

cated, nor the circumstances of the act. It violates the rule against hearsay, and is generally regarded as prejudicial. *State* v. *Peck,* 90 W. Va. 272; *Brogy* v. *Commonwealth,* 10 Grat. (Va.) 722; *State* v. *Harrison,* 98 W. Va. 227; 127 S. E. 55. But can we consider this assignment when there was no ruling of the court on the motion to strike out the answers? There must be a ruling on a motion and an exception taken to the ruling. The motion not being pressed, and no exception taken either to the ruling of the court or to its failure to rule, is tantamount to a waiver. It is held that where a motion is made to exclude evidence and the court properly reserves its decision until further development of the case in order to test its admissibility, and the objector does not later again press his objection, it will be treated as waived. *Waldron* v. *Waldron,* 73 W. Va. 311. And it is quite generally held that the admission of hearsay evidence without objection and exception is not ground for complaint in the appellate court. *State* v. *Gibson,* 67 W. Va. 548; *Taylor* v. *Commonwealth,* 122 Va. 886, 94 S. E. 795. Moreover, there is another ground on which the court would have been justified in refusing to strike out the answers. The fact that the prosecutrix made complaint and the time when she did so, as contained in the answers, was competent and admissible. The motion should have been made to exclude from consideration that part which implicated defendant as the perpetrator of the offense. *White Sewing Machine Co.* v. *Gilmore Furniture Co.,* 128 Va. 630, 105 S. E. 134.

Error is assigned because Dr. Harmon was permitted to testify that he made an examination of the genital organs of the prosecutrix on February 6, 1925, and that he found her hymen ruptured, because the time of the examination was too remote from the time of the alleged offense. To support this assignment 33 Cyc. 1471-2 is relied upon, which says: "If the examination is made at a distant time, and acts of intercourse with other men may have taken place, it is too remote, and such evidence is not admissible." To support the text *State* v. *Evans,* 138 Mo. 116; *People* v. *Butler,* 55 N. Y. App. Div. 361; and *People* v. *Cornelius,* 55 N. Y. Supp. 723, are cited. The *Evans* case cited was a prosecu-

tion for rape on a girl under the age of consent, 14 years. A physician made an examination four months after she had reached that age and he said her hymen was ruptured. The court said the time was too remote and the evidence incompetent. In *People* v. *Butler* the examination was made one year and eight months after the alleged crime was committed and the hymen was found to be ruptured and the vagina large and relaxed for a person of that size and age. The New York statute required corroborating evidence to sustain a conviction for a crime of that character. The prosecutrix had stated that the copulation began in July, 1895, and the intercourse was frequent from that day and even after the crime as alleged in the indictment (Aug. 1896) was committed. The court held that the testimony of the physician was not corroborative of the charge. In the *Cornelius* case cited, the examination of the physician was made about four years after the commission of the alleged crime, and after the prosecutrix had been having carnal intercourse with other persons. It was too remote, and had little probative value in establishing that a crime had been committed. If the time of the examination is not too remote the evidence is admissible. Its remoteness affects its probative force. *People* v. *Benc,* 130 Cal. 159, where the examination was made about six days after the offense. And in *Lyles* v. *U. S.,* 20 App. Cas. (Dist. Columbia) 559, the examination was made four months after the crime. In *Gifford* v. *People,* 148 Ill. 173, the examination was made five or six months after the crime, and it was held to be admissible. In *Com.* v. *Allen,* 135 Pa. St. 483, the examination was about one and one-half years after the offense, and was received, the court holding that it was of little probative force. Many other cases of like import could be cited. In the instant case the prosecutrix says she had not had carnal intercourse with other males (although another witness said she had told her otherwise) and the evidence was admissible for whatever value the jury may have seen proper to give it under the evidence and circumstances. It was not too remote. It would not be improper to state, in this connection, that this same physician, Dr. Harmon, a State's witness, filed an affidavit supporting the motion for a new trial, to the effect

that his examination of her disclosed an unusually large and extended vagina, both larger and wider than that of the average grown married woman, and in his opinion the condition of her genital organs would not likely result from one intercourse with defendant whose male organ was unusually small. Evidently, although a witness for the State, this physician was not convinced by the prosecutrix's protestation of chastity.

Another alleged error is based on the refusal of the court to permit Dr. Rudasill to answer a hypothetical question relating to defendant's capacity for copulation. This witness had made an examination of defendant's sexual organs and found him afflicted with orchitis. One testicle had shrunken to about one-eighth and the other to about one-fourth normal size. He was asked whether, in his opinion, based on his examination of the sexual organs, and defendant's age and condition, defendant would be capable of having sexual intercourse in Nov. 1924. He was not permitted to answer, nor was he permitted to state his opinion as to whether defendant's condition as described existed on Nov. 22, 1924. It will be remembered that defendant said he had the mumps in the year 1921, which "fell on him" and destroyed his sexual desires and rendered him incapable of having sexual intercourse, a condition which had existed about four years. Another witness, Dr. John Thames, was allowed to answer practically the same questions propounded to Dr. Rudasill, and the former's evidence showed the same condition of the organs as found by the latter, with the additional fact that the penis was flaccid and small and showed diminution. Objection to his opinion as to defendant's power of sexual intercourse as of Nov. 22, 1924, was sustained, but the witness remarked that he could not answer that question anyway. The court then permitted him to give his opinion, and he stated that while atrophy of some of the organs would naturally affect others, it would at least lessen desire and lessen power of "election" and copulation. It is not perceived why one doctor would be permitted to testify and the other of equal qualification and experience be refused. The evidence proffered went to one of the two defenses relied upon. It

corroborated defendant's testimony. A witness who has qualified as an expert may give his opinion based on his own knowledge of the facts necessary for that opinion. *Hanley* v. *Railway Co.*, 59 W. Va. 419; *Bowen* v. *Huntington*, 35 W. Va. 682-692; 22 C. J. Sec. 819. The evidence proffered was admissible, and it was prejudicial error to refuse it. Its weight was for jury determination. In this connection, it is insisted that defendant's wife, about 30 years of age, should have been permitted to testify that for more than a year previous, defendant had not had sexual intercourse with her and was unable to do so, because of his physical inability resulting from orchitis, although they had been sleeping together all that time. Defendant proffered this evidence, but, on objection by the State, it was refused. The record was vouched to the effect that she would say, if permitted to testify, that her husband had not had sexual intercourse with her for more than a year previous, and that he was unable to do so, because of the condition of his reproductive organs, resulting from the mumps. The wife is a competent witness in his behalf in a criminal prosecution under Chap. 152, Sec. 19, Code 1923, at his request, and the evidence proffered would have tended to substantiate the defense relied upon, namely, inability to copulate. It was error to exclude it.

Another alleged error is that the State was permitted to introduce and examine witnesses to disprove statements made by defendant's witnesses regarding the reputation of the prosecutrix for truth and veracity. Witnesses for the defense said her reputation was bad, and that they would not believe her on oath. They were asked the names of the persons who had told them her reputation was bad. The names were given. Then several of the persons so named were called by the State and they said they had never discussed her reputation with the defendant's witnesses; and, on the contrary, they said her reputation was good. This was not error. However, in at least two instances, rebuttal witnesses were permitted to say, over objection, that they had never discussed her reputation with certain State witnesses who, it appears, did not claim to have discussed her reputation with these rebuttal witnesses. For instance, Stephen Martin was per-

mitted to say that he had not told Virgil Bell (a defense character witness) that the reputation of the prosecutrix was bad, whereas, Virgil Bell in his evidence did not mention Stephen Martin as one with whom he had talked on that subject. No foundation was laid for the contradiction of Bell in that regard. The simple statement impels a conclusion of error. *State* v. *Goodwin,* 32 W. Va. 177. Whether it was reversible error is a more serious question. It was on a collateral issue.

We now come to the instructions. Instruction No. 6 requested by defendant was refused. It relates to reasonable doubt, with the added proposition that it is not sufficient for conviction that the evidence creates a strong suspicion of guilt. The substance of this instruction, while not in the same terms, was covered by other instructions, and it was not error to refuse it.

Instruction No. 11, refused, would have told the jury that they might consider the time intervening between the date of the alleged offense and the date of the complaint made by the mother. It was properly refused. The girl made her complaint the next morning, and the delay of the parent in having the warrant issued would not affect the truth of her charge. She was of tender years and could not be expected to apply promptly for a warrant on her own initiative.

Defendant's instruction No. 13, refused, would have told the jury that they might consider the physical condition of defendant at the time of the alleged offense, and give such weight to the probability of lack of desire to have sexual intercourse, as they might from the evidence accord to it. Evidence was permitted as to his physical condition, impotency and incapacity for copulation, and it was pertinent to the issue. Where the evidence tends to support a theory of defense the prisoner is entitled to a proper instruction directing the jury's attention to the evidence and that it may be considered and given such weight as they may conclude it deserves. The proposition needs no citation of authority. *State* v. *Wisman,* 94 W. Va. 224. It was error to refuse to give this instruction.

Instruction No. 14 was properly refused. It is based on the theory that the State's case rests on circumstantial evidence. The evidence was direct, and not circumstantial.

Instruction No. 16, refused, if given would have told the jury that if they believed from the evidence that defendant had proven an alibi they should find him not guilty. It is argued by the State that it was properly refused, because it was covered by the instructions on reasonable doubt. The law on instructions as to the defense of alibi is stated in 1 Blashfield on Instructions to Juries, page 696, Sec. 322, as follows: "It is the duty of the trial court to instruct on the law of alibi, and error to refuse such an instruction, when there is substantial evidence in support of the defense, or when the only defense is that of alibi, and the proof tends clearly to establish such defense, if not equivalent instruction on the subject is given". In some States it is held error for the court to neglect to give an instruction on the subject where the defense is an alibi, even though request for such instruction is not made. *Holland* v. *State*, 86 S. E. (Georgia) 739. See *Arismendis* v. *State* (Tex. Cr. App.), 60 S. W. 47. But it seems to be the rule that an omission to charge with reference to an alibi is not reversible error unless the charge to the jury be excepted to because of such omission, or unless a specific charge on that defense be requested and refused. But if exceptions are duly saved to the court's omission to instruct on this subject, or a special request for such an instruction is made and refused, this will be ground for reversal. 1 Blashfield Instructions to Juries, Sec. 322. In *State* v. *Lowry*, 42 W. Va. 205, 24 S. E. 561, we held that while a claim of alibi was defensive, and the burden of proving it was on defendant, yet if the evidence was sufficient to raise a reasonable doubt in the minds of the jury as to the presence of the accused at the commission of an offense where personal presence is essential, then he should be acquitted. And the refusal of an instruction, in substance, like the one asked for in the instant case was held to be error. See *State* v. *Parsons*, 90 W. Va. 307; *State* v. *Kelly*, 16 Mo. App. 213; and note in 29 A. L. R. 1127. The defendant was entitled to an instruction telling the jury if the evidence of his alibi, to-

gether with all the facts and circumstances, created in their minds a reasonable doubt of his presence at the commission of the crime alleged, they should give him the benefit of that doubt, and acquit him. He asked for less than he was entitled to. We can see no good reason for the court's refusal to give this instruction and we have been cited to no authority which would justify such action.

The court properly refused a new trial on the ground of after-discovered evidence. The affidavit and evidence in support of the motion that there was documentary evidence, or a memorandum in writing, that defendant was moving his goods from Maryland on Nov. 22nd, was cumulative; and the affidavit of the father and brother of defendant that Lewis, the step-father had made overtures for suppression of the prosecution in consideration of money, showed want of diligence in procuring such evidence at the trial. The father and brother knew it.

The court did not err in holding that there has not been such a separation of the jury as would vitiate its verdict, the evidence being reasonably clear that defendant could not have been prejudiced thereby. We do not mean to relax the rule that there must not be a separation, for the presumption is that an irregularity of this character is prejudicial. The separation was unnecessary. The article the juror desired could have been easily procured by messenger; and such irregularities ought to be and are condemned and disapproved. But as there must be a new trial the point will not be further discussed, except to say that it is reasonably clear that the separation was not prejudicial.

*Judgment reversed; verdict set aside; new trial awarded.*