## STATE v. SAUNDERS.
No. 5307. Decided June 19, 1933. (22 P. [2d] 1043)

*Leslie Frazer* and *Thomas W. Mackay*, both of Salt Lake City, for appellant.

*Geo. P. Parker*, Attorney General, and *L. A. Miner*, Deputy Attorney General, for the State.

HARRIS, District Judge.

Defendant was convicted of indecent assault of a female aged eleven years in violation of section 8049, Comp. Laws Utah 1917, which reads as follows:

"Every person who shall assault a child, whether male or female, under the age of fourteen years, and shall take indecent liberties with or on the person of such child, without committing, intending, or attempting to commit the crime of rape, or the crime of assault with intent to commit rape, upon such child, with or without the child's consent, shall be deemed guilty of an indecent assault, and on conviction thereof shall be guilty of a felony."

From the judgment of an indeterminate term in the state prison this appeal is prosecuted. Since the defendant claims there is insufficient evidence to support the verdict, we are obliged to briefly set out the substance of the evidence of the state.

The defendant, a man aged 47 years, had at one time boarded with the grandmother of one of the principal witnesses for the state, which witness was ten years of age. The grandmother rented a part of her house to the father of a young lady aged eleven years upon whom the indecent assault is alleged to have been committed. The grandmother testified that on the occasion in question the defendant called at her home about dusk, and, upon inquiring for the witness above referred to, was told that she was playing over to the neighbors, and the grandmother would have to hurry and go call her home, at which time the defendant stated he was going that way and would call to her; that the grandmother afterwards looked for the witness but could not find her until she came home about 8 p. m. with her stockings rolled down.

The young girl upon whom it is alleged the assault was committed testified: That she and the witness above referred to were playing on the lawn back of Dr. Robinson's home, when, at about dark, defendant called to the two young girls. That they went to the front of the house, and after some

short talk sat down on a platform or cement railing near the fence. While they were there, the defendant felt around her legs and in her crotch, with his hand on her privates, said he would like to suck that some day. That they talked there awhile, during which time he kissed both girls and asked if they knew some place to go to love. They told him they did not, and the three of them walked up the street until they passed a place with some umbrella trees on the lawn. Defendant went onto this lawn, and called the two little girls under one of the umbrella trees. He laid down, and later told the witness to take off her bloomers, which she did, and then had her sit down on his face, and he kissed her legs and privates, and later took out his private and had the girls take hold of it. That they kept taking their hands away, and he would make them hold on to it tighter. The companion of the girl assaulted corroborated this story, with the addition that, while they were holding defendant's private, it was discharged and went on her stockings and wet them, making it necessary for her to roll them down. The witness further testified defendant told them when they parted, "If I come back and you are fifty years old and you tell, I will kill you." On cross-examination the girl assaulted testified, "We told him we did not want him to do it but he kept on." "Well, we did not like him to do it, but we thought maybe if one of us run to tell, why he would take one of the others and maybe he would kill us."

As we understand appellant's argument, it is that, even though there is sufficient evidence to support a verdict of indecent conduct, there is no evidence of violence sufficient to constitute an assault. An assault is defined by section 8065, Comp. Laws Utah 1917, as follows:

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

This court in the case of *State* v. *Macmillan,* 46 Utah 19, 145 P. 833, 834, held that an information charging indecent assault in the language of the statute was sufficient without

setting forth the acts constituting the indecent liberties or assault, and in this connection the court said:

"It has been held that, under a statute like ours, an 'indecent assault' and 'indecent liberties' are convertible terms.  *  *  *  We think that every person of the most ordinary intelligence and underderstanding, who is familiar with merely the rudiments of the English language, understands what is meant when he, or any one else, is charged with having taken indecent liberties with the person of a child."

If the terms "indecent assault" and "indecent liberties" are convertible terms, there is nothing to be gained by a lengthy discussion as to the purpose or meaning of the word "assault" in the above statute, or the amount of violence necessary to constitute an indecent assault or taking indecent liberties with a child, and we are satisfied to leave the matter with the statement that the conduct of the defendant in this case as above set forth was clearly sufficient to violate the terms of the above statute.

In this case the court was very liberal to the defendant in instructing as to the meaning of assault, and that merely kissing the witness, or acts on her part that might have been solicited and encouraged by defendant would not constitute an assault. The defendant denied his guilt, and there was some conflict in the evidence in other particulars, but we are satisfied that there was abundant evidence to support the verdict.

The defendant assigns as error the refusal of the trial court to give his request for instruction to the ■ jury as follows:

"Evidence has been introduced tending to prove that defendant was not present at the scene of the offense at the time it is claimed to have been committed. If such evidence when considered in connection with all the other evidence in the case, creates in your mind a reasonable doubt as to defendant's presence at the time and place the offense is alleged to have been committed, you should acquit him even though in the absence of such evidence you may believe him guilty beyond a reasonable doubt."

The information filed in the case charged October 13, 1931, as the date of the alleged offense. The evidence of the state was that the offense was committed between the time it was getting dark and 8 p. m. on either the 12th or 13th of October, 1931. The defendant testified that he was at his boarding house on the evening of October 13th from 6:30 p. m. and remained there the entire night. The woman who conducted the boarding house and a fellow boarder corroborated this testimony. The defendant testified that on the evening of October 12th he was out giving some readings on psychology; that between 7:30 and 8 o'clock he met Melvin Fillmore and talked with him on the sidewalk; that after he finished the conversation he went to the home of Mr. Fillmore and gave his wife a reading; that after he finished that reading he went to the home of Mrs. R., grandmother of the little girl alleged to have been assaulted, and gave her a reading. Mrs. R. testified the reading he gave her was on October 5th, and further testified that the night he gave her the reading was not on the night of the alleged offense. Defendant testified that on the night of October 5th he was at a meeting in the city hall from about 7 to 10 p. m. The secretary of the meeting corroborated the defendant's testimony as to October 5th. The length of time occupied by the readings or their exact nature or character is not disclosed by the record, and it is argued that the evidence does not constitute any evidence of an alibi on October 12th because it does not prove, even if true, that the defendant was so far away from the alleged scene of the offense at the time it is shown to have taken place as to make it impossible for the defendant to commit the same. We are convinced that the record does contain evidence tending to show that the plaintiff was not at the place where the crime was committed at the time it was claimed it was committed.

The court refused to give the requested instruction, and no instruction whatever was given to the jury upon the defendant's theory of alibi. The law seems to be well settled

that, where the evidence is offered tending to show that a defendant was elsewhere when the crime is alleged to have been committed, he is entitled to an instruction as to the evidence of alibi, especially when a request is made for such an instruction. The following authorities cited by appellant support that view: *Abaly* v. *State,* 163 Wis. 609, 158 N. W. 308; *People* v. *Coston,* 187 Mich. 538, 153 N. W. 831; *State* v. *Abbott,* 65 Kan. 139, 69 P. 160; *State* v. *King,* 50 Wash. 312, 97 P. 247, 16 Ann. Cas. 322; *State* v. *Friend,* 100 W. Va. 180, 130 S. E. 102; *State* v. *Brauneis,* 84 Conn. 222, 79 A. 70; *State* v. *De Geralmo,* 83 N. J. Law, 135, 83 A. 643; *McKissack* v. *State,* 16 Ala. App. 109, 75 So. 701; *Beard* v. *State,* 97 Tex. Cr. R. 393, 261 S. W. 780; *State* v. *Conway,* 55 Kan. 323, 40 P. 661; *Burns* v. *State,* 75 Ohio St. 407, 79 N. E. 929; *People* v. *Garrett,* 93 Cal. App. 77, 268 P. 1071; 16 C. J. 976 to 979, and 1058. This court in *People* v. *Kessler,* 13 Utah 69, 44 P. 97, approved an instruction as to the law of alibi.

The court, however, is not required to give an instruction as to an alibi if "there is not sufficient evidence to support it; or where presence is admitted; or where because of a conspiracy between the defendant and another to commit the crime, it makes no difference whether the defendant was present or not when the crime was committed; or where no defense of alibi is made." 16 C. J. 977. In the case of *Courtney* v. *State,* 10 Okl. Cr. 592, 140 P. 163, the court, after determining that defendant had a right to have his theory of alibi presented to the jury in the court's instructions, says: "The Assistant Attorney General has filed a written brief urging this court to abandon or depart from the well-established doctrine of practically all courts on this question. We are unable to conclude that the position is tenable or that such departure on the part of this court would be warranted. It is just as important * * * that persons who are charged with crime be accorded a fair and impartial trial as it is that the law be enforced at all."

There appears to be some conflict or confusion in the cases as to what constitutes sufficient evidence of an alibi to require the issue to be submitted to the jury and as to the form of instruction that should be given. Apparently much of this confusion grows out of the ■ failure to recognize the difference between the burden of proof of defendant's guilt as against the burden of going forward with the evidence and also the distinction between the definition of an alibi and the quantity of evidence or proof that must be offered to justify submitting the issue of alibi to the jury. Some cases seem to hold that the evidence of alibi must be such that, if true, the defendant would be so far from the alleged scene of the offense at the time of its commission that it would have been impossible for him to commit the crime. 16 C. J. 93. A number of such cases are cited in the note in 29 A. L. R. 1127. Apparently, however, the far greater number of cases have reached the conclusion that it is not necessary for the defendant to produce proof that he was so far removed from the alleged scene of the crime that it would have been physically impossible for him to commit the crime, but that, if there is substantial evidence tending to prove the defendant was not present at the time and place the crime was committed, which, when considered with all the other evidence in the case, might raise a reasonable doubt of the defendant's guilt, then he is entitled to have the jury instructed as to the law with respect to his defense on the theory of alibi.

In the extensive annotation in 29 A. L. R. 1127, the annotator points out this confusion, and at page 1186 says:

"It has already been shown  *  *  *  that evidence offered to prove an alibi it not to be disregarded, although it is not of itself sufficient to establish the alibi, considering the same as a distinct, independent issue which must be proved by a preponderance of the evidence. One phase or application of that rule would seem to be that it is not necessary that the alibi evidence should cover all the time in question so fully, and relate to another place so remote, that it would be physically impossible, if this evidence were true, for the defendant to have com-

mitted to crime; but that even if the evidence offered to prove the alibi does not meet these requirements, it may be sufficient to raise a reasonable doubt of guilt."

The annotator points out that an alibi is not a separate and distinct defense which the burden is upon the defendant to prove by a preponderance of the evidence, but is merely a method of negativing or denying or refuting the evidence upon which the state has the burden of proving the defendant's guilt.

We are convinced that the better rule does not require that defendant produce evidence of an alibi that would prove it impossible for him to have been present at the scene of the alleged crime, but, where there is substantial evidence that the defendant was not present at the time and place the crime was committed, which, when taken into consideration with all the other evidence in the case, might create a reasonable doubt of his guilt, he is entitled to have his theory of defense of alibi submitted to the jury.

From the foregoing it is evident that the defendant here was entitled to have his theory on the law of alibi submitted to the jury, and under the authorities cited it was prejudicial error not to do so. By what is here said it is not intended to necessarily approve the exact form of the requested instruction, particularly the last clause which we regard as unnecessarily argumentative. It would appear to be a better form to instruct the jury that, if the evidence of alibi, when considered in connection with all the other evidence in the case, raises a reasonable doubt as to the guilt of the defendant, then he should be acquitted.

The judgment of the district court is reversed, and the case remanded for a new trial.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., did not participate herein.