# CHARLESTON.

## STATE v. JOE PECK.

Submitted February 7, 1922.   Decided February 14, 1922.

CRIMINAL LAW—*Witness' Statement of Particulars Detailed by Prosecutrix Six Hours After Occurrence Held Hearsay and Not a Part of the Res Gestae.*

In a prosecution for attempt to commit rape, it is reversible error to permit a witness, to whom prosecutrix detailed the particulars of the commission of the alleged offense six hours after it occurred, to repeat the particulars so given him by her to the jury. Such evidence is hearsay and not a part of the res gestae.

Error to Circuit Court, Greenbrier County.

Joe Peck was convicted of attempt to rape, and he brings error.

*Reversed and remanded.*

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

The defendant was convicted of an attempt to commit a rape on Viola Adkins, and, on the 3rd day of February, 1921, was sentenced to confinement in the penitentiary for three years, and he now presecutes this writ of error.

Defendant is a negro boy about 22 years of age and for several years prior to the indictment had been working for the white people on their farms in the neighborhood where the alleged offense was committed. At one time prior thereto he had worked on the farm of the husband of the prosecutrix. Several witnesses, men prominent in the community, testified that he was of an especially law abiding disposition and had never been in any trouble before; that he had lived many years in the community, had worked for them and others, was respectful to their families and was peaceable, quiet, inoffensive and of good character. The prosecutrix, Viola Adkins, testified in substance, that on the 29th of October, 1920, when her husband was away from home and at the city of Ronceverte, defendant came to her house, and, after some conversation concerning the whereabouts of her husband, he went into the house and sat down by the fire, whereupon she followed him into the house and ordered him to go away. He then informed her that he had three polecat hides he desired to sell to her husband but she told him that she did not want to purchase and again ordered him to leave the house. As she started out of the kitchen with the intention of going out of the house, he remarked that he liked white women better than he did colored women and caught her as she passed, but she broke away from him and got opposite the "meal room" door when he again caught her. She again broke away from him and told him she would have him arrested and to get away from there "quick." After getting out of the house, being followed by the boy, she again told him to leave the premises but he then insisted that he desired to sell the polecat skins and made a proffer to sell them for 50c, or that he would sell them to her "for a little." She again told him to leave but he replied that he was hungry and wanted a piece of bread, or wanted some matches as he desired to take a smoke, and

she again ordered him. to leave the premises, with a threat to have him arrested. He then ''moped'' up through the yard, looking·back until he went out of sight beyond an out-house and disappeared. She then went into the house, called up some neighbor, and asked her to inform her husband as he returned from Ronceverte that she would be at Mrs. Clel Wilson's house; that something had occurred which she had not expected, and to come there for her on his return. She took her child, about two or three years old, and immediately went to Mrs. Wilson's house, about ½ mile from her dwelling. She did not inform Mrs. Wilson of what had occurred but stated to her in a general way that something had happened which she had not expected and that she would wait there for the return of her husband. Mrs. Wilson testified that prosecutrix was apparently excited when she came to her house that day but did not tell what had occurred. Mrs. Adkins remained at Mrs. Wilson's house until her husband returned, about six hours after the alleged attempt. When he came for her she told him what had occurred, giving minute and specific particulars. . Two or three days after, the husband went to a nearby station on the railroad for the purpose of obtaining a warrant for the defendant but was informed that he would have to go to Ronceverte for that purpose, where a justice of the peace resided. A week later he and his wife went to the city of Ronceverte for the purpose of obtaining a warrant and on their· way met the defendant, who approached the husband and made an attempt to enter into a conversation with them, stating that he had heard in the neighborhood that they had· accused him of ''holding up'' Mrs. Adkins. They refused to enter into conversation with him and pro-ceeded to the justice of the peace, where the warrant was issued. The husband was placed on the witness stand and in the course of his evidence was asked what his wife said to him when he found her at Mrs. Wilson's house on his return from Ronceverte, and he proceeded to give all of the details of the alleged attempt as detailed to him by her on that occa-sion. This· evidence was objected to by defendant, but the court permitted the witness to state what his wife had told him, going into the most minute details and particulars. His

testimony was a reiteration of the statements made by the wife in her testimony. The only other witness offered by the prosecution was Mrs. Wilson, whose evidence has been referred to. The defendant denied that he ever made any attempt to touch Mrs. Adkins or to go into her house on that occasion or that he had made any indecent proposal to her, or had done anything which was not entirely respectful to her. He admitted that he was at her house and went into the yard and inquired if Mr. Adkins would purchase from him the polecat skins which he then had in his hands; that she seemed to be excited and ordered him to go away and leave the premises, which he promptly did. He detailed a conversation which occurred between them but of an entirely different nature from that given by the prosecutrix. Sometime before this occurrence he had sold to Mr. Adkins a polecat skin and went there this time for the purpose of making another sale. The only other evidence taken was that of the character witnesses, who testified as to the good standing and character of the defendant.

There are two grounds of error relied upon: (1) That the evidence is not sufficient to prove an attempt to commit rape; (2) that the court erred in permitting the husband to detail the conversation which he had with his wife six hours after the alleged offense, in which she gave the particulars of the alleged crime.

We do not deem it necessary or proper to pass upon the first ground of error, inasmuch as we have concluded to reverse the judgment of the lower court and award a new trial. We are of opinion that the second ground of error is well taken.

It is well settled by the great majority of decisions and by the text writers that it is error to permit a witness to whom the prosecutrix has detailed the particulars of a crime of this character to repeat to the jury what she said in relation thereto, especially where the witness details the particulars of the occurrence. In a few of the jurisdictions the details of the complaint are held admissible for the purpose of corroborating the prosecutrix, but, as above stated, the great weight of authority is that any person to whom she has made

a complaint or detailed the circumstances is not permitted, when placed on the witness stand, to repeat all of the details and particulars as reported to the witness by her. It is permissible for the witness to state that she made the complaint but to that extent only should the evidence go. 22 R. C. L. p. 1213, sec. 48; *State* v. *Griffin,* 43 Wash. 591, 11 A. & E. Ann. Cases, 95, where it is held that it is proper to show, as corroborative testimony, the fact that prosecutrix made complaint of the outrage soon after its commission, but the particulars and the name of the person alleged to have committed the act should be excluded. See also *People* v. *Mayes,* 66 Cal. 597; *Shartzer* v. *State,* 63 Md. 149; *Oleson* v. *State,* 11 Neb. 276; *Castillo* v. *State,* 31 Tex. Crim. 145. The rule and the reason therefor are given by Judge Allen in the leading case of, *Brogy* v. *Commonwealth,* 10 Gratt. (Va.) 722, decided in 1853. It is there stated, ''though it is competent to prove a fact of a recent complaint by the female for the purpose of sustaining her credit, it is not competent to prove the particulars of her complaint.'' Of course it would be competent to show, in addition to the fact that the prosecutrix made a complaint, her appearance, whether or not her clothes were torn or. marks of violence upon her person, or agitation and the like, but it is apparent that if the evidence be permitted to go beyond these, then the rule which excludes hearsay and statements not under oath is violated. If one witness is permitted to detail her conversations and statements, then any number of witnesses who heard her make the same statement on other occasions would also be permitted to testify—a rash departure from one of the most salutary rules of evidence. ''By weight of authority evidence must be confined to the particular fact that complaint was made; the details or particulars of the complaint not being admissible as substantive testimony unless the statement is a part of the res gestae.'' 33 Cyc. p. 1463, and decisions there cited from practically all of the states. It cannot be maintained, and it is not here asserted, that the statements made by Mrs. Adkins to her husband at the home of Mrs. Wilson, six hours after the alleged offense, could be considered as a part of the res gestae.

On overwhelming authority, and reason, we conclude that the evidence of the husband, detailing the particulars of the alleged offense, as told to him by his wife, is incompetent, prejudicial and reversible error; and we reverse the judgment, set aside the verdict, and award a new trial.

*Reversed and remanded.*