[Crim. No. 31095. Second Dist., Div. Four. Aug. 10, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW GARZA PEREZ, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Ronald Ito, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

JEFFERSON (Bernard), J.—By an amended information, defendant was charged with having sold heroin on July 1, 1976, in violation of Health and Safety Code section 11352. Additionally, it was alleged in the amended information that, on October 3, 1974, defendant had suffered a felony conviction of possessing heroin in violation of Health and Safety Code section 11350, and had served a prison term of more than one year for such offense, and had not remained free of prison custody for five years immediately preceding the filing of the first accusatory pleading

within the meaning of Penal Code section 667.5, subdivision (b). Defendant entered a plea of not guilty and denied the allegation of the prior felony conviction.

Subsequently, defendant withdrew his denial and admitted the prior felony conviction. The trial was by jury. Defendant was found guilty as charged. Defendant was sentenced to state prison for the term prescribed by law, with the court finding that the prior felony conviction was true in light of defendant's admission of having suffered such conviction. Defendant has appealed from the judgment of conviction.

I

*Statement of Factual Background*

On June 30, 1976, Rosemarie Ramos, acting as an informant for the Santa Barbara Police Narcotics Task Force, went to the residence of Arturo Lopez Fernandez (hereinafter Lopez because he was so referred to by several witnesses). Rosemarie had previously known Lopez. On her visit to the apartment of Lopez on June 30, she sought to purchase heroin from Lopez, but Lopez said that he did not have any. The next day, on July 1, 1976, Rosemarie met with officers of the Santa Barbara Police Department, was searched, and given $25 with which to make a purchase of heroin from Lopez. In addition, a transmitting device was taped to her chest by one of the officers.

She then proceeded to visit the home of Lopez and offered to purchase $25 worth of heroin from him. Lopez told Rosemarie that although he did not have any heroin, he could get some for her if she could obtain more money. Lopez also said that he could obtain five balloons of heroin for her if she secured $125. She indicated that she could obtain the money; Lopez then told her to return in a half hour.

Rosemarie went immediately to the waiting officers and was given an additional $90. She then returned to the Lopez apartment with $115. Lopez indicated to Rosemarie that they would leave his apartment in order to buy heroin.

They then left the apartment and drove away in Rosemarie's vehicle. Lopez directed her to drive to the parking lot of a pool hall. There Lopez looked around, stating that he was looking for a particular car. He then

directed Rosemarie to drive down Haley Street. As they passed Santa Barbara Street while proceeding down Haley Street, Rosemarie pulled to the side of the street and parked at the request of Lopez.

Lopez exited from Rosemarie's vehicle and walked over to where defendant and another person were standing near the open trunk of a red and white automobile. Lopez, defendant and the other individual conversed for several minutes. Rosemarie said that she did not observe this other individual give any object to either Lopez or defendant. Defendant and Lopez then came over to Rosemarie's vehicle and got in. Defendant seated himself in the rear seat while Lopez got in the front passenger's seat.

At defendant's direction, Rosemarie drove to Bond Avenue and stopped her vehicle across the street from a residence where defendant stated he lived. At this time defendant stated to Lopez: "Do you have the money?" Lopez then asked Rosemarie for the money and she handed him the $115 which the narcotics task force officers had supplied to her. Defendant and Lopez got out of her vehicle, walked across the street and entered defendant's home. Rosemarie remained in her vehicle while defendant and Lopez entered defendant's home.

Approximately five minutes later, defendant and Lopez returned and re-entered Rosemarie's vehicle. Defendant directed Rosemarie to drive to the Tana apartments located on Nopal Street. Upon arriving at the location, defendant got out of the vehicle and walked towards the apartment building. While defendant was walking toward the apartment building, Rosemarie asked Lopez if he had the heroin. Lopez replied that he did have the heroin but told Rosemarie that she would have to wait.

Rosemarie heard defendant shouting for a person whose name sounded like Ann or Al. After the shouting, defendant returned to the Rosemarie vehicle and directed her to drive to a location on Ruth Avenue. Defendant stated that he wanted to pick up his cousin who would help him work on his vehicle.

Rosemarie drove to the corner of Ruth and Castillo Streets and parked. Defendant got out of the vehicle and said that he was going to his cousin's house. While Rosemarie and Lopez waited for defendant to return, Lopez told Rosemarie that defendant had previously asked him if he,

Lopez, wanted defendant to "burn" her.[1] Lopez also asked Rosemarie to keep quiet because defendant did not like people who talked too much.

Defendant returned to the vehicle and, apologizing for the delay, explained that his aunt was angry with him becaue she considered him responsible for his cousin's use of drugs. Both defendant and Lopez then directed Rosemarie to drive to the Lopez apartment.

As directed, Rosemarie drove back to the Alamar apartments and parked. Rosemarie, Lopez and defendant proceeded to exit from the vehicle. Lopez told Rosemarie to go up to his apartment and wait for him. Defendant and Lopez then walked toward the area of defendant's automobile, which was in the parking lot.

Rosemarie entered the apartment of Lopez and waited for him to return. Subsequently Lopez came in. Rosemarie asked Lopez for the heroin, but he did not give it to her immediately. He told her that he could not give her the full amount of heroin because she did not have enough money. Lopez then injected heroin into himself and his wife and told Rosemarie how good it was. Lopez then handed Rosemarie three balloons instead of the five she expected to obtain. Lopez told Rosemarie that two of the three balloons contained a double quantity.

While the heroin transaction was taking place in the Lopez apartment, defendant was in the parking lot, working on his automobile.

Rosemarie left the Lopez apartment and drove nearby to the location where the police officers were waiting. She handed the three balloons to Detective Moreno and they returned to the police station. The three balloons contained heroin in a useable quantity.

At the trial, defendant put on a defense to the effect that he was not the supplier of the heroin which Lopez had sold to Rosemarie. The defense testimony related that, in June of 1976, defendant and Lopez had traded automobiles which resulted in defendant owing Lopez $300 which was to be paid in installments. Lopez and defendant both testified in favor of defendant. Lopez admitted the visit by Rosemarie on June 30, 1976. Lopez said that on the night of June 30, he contacted an illegal alien named "The Perro" who sold him six bags of heroin the next morning, and that part of this quantity constituted the heroin that Lopez

---

[1]Rosemarie testified that, from her experience with narcotics, the word "burn" means to take your money and not give you any heroin.

sold to Rosemarie. Lopez said that he had Rosemarie drive him to various locations on July 1, in order for him to find defendant and obtain some of the money which defendant owed him as a result of the exchange of automobiles.

When defendant was spotted near the red and white automobile, Lopez approached him and requested that he be paid half of the $300 which defendant owed. Defendant asked Lopez to take him to the home of defendant's mother, where he would seek to obtain additional money. He had only $50 to give Lopez. While in the mother's home, defendant obtained an additional $50 from her which made a total of $100. Upon returning to the Rosemarie vehicle, defendant asked to be driven to an apartment building on Nopal, where he expected to find a girl named Anna who might lend him additional money to pay to Lopez.

The subsequent drive to Ruth Avenue was for the purpose of defendant finding his cousin Al to help Lopez fix the generator on the automobile that defendant had traded to Lopez.

## II

*The Question of the Admissibility, Under the Contemporaneous-statement Exception to the Hearsay Rule Provided by Evidence Code Section 1241, of Certain Hearsay Statements of Lopez to Rosemarie*

Over defendant's hearsay objection, the trial court permitted Rosemarie to testify that after the visit to the Lopez apartment and after informing him that she had $115 with which to purchase heroin, she and Lopez were proceeding to leave the apartment and Lopez stated to her that they "were going to buy heroin."

The second hearsay statement was a statement made by Lopez after he and Rosemarie had driven to the back of a pool hall. While on the parking lot, Lopez looked around and said that he was looking for a car.

The People contend that evidence of these two hearsay statements is admissible under the exception to the hearsay rule for a contemporaneous statement—authorized by Evidence Code section 1241. Evidence Code section 1241 provides for the admissibility of evidence of a hearsay statement if the statement "(a) Is offered to explain, qualify, or make

understandable conduct of the declarant; and [¶] (b) Was made while the declarant was engaged in such conduct."

■ But even if these two statements of Lopez be deemed as satisfying the requirements for the contemporaneous statement exception to the hearsay rule, evidence of these statements is nevertheless inadmissible against defendant. Any proposed relevancy of these two statements is to the effect that Lopez was stating that he was looking for *defendant* as the source of his purchase. As such, Lopez was making an implied hearsay statement that defendant was a supplier of heroin. Because of the necessary implication to be derived from these statements of Lopez, the evidence becomes inadmissible hearsay against defendant.

Evidence of these statements of Lopez implicating defendant, by necessary inference, in the sale of narcotics to Rosemarie would have been inadmissible against defendant had Lopez been made a codefendant. (See *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].) Such evidence can have no lesser prejudicial effect because Lopez was not made a defendant. Since Perez was the only defendant in the case, it is immaterial that Lopez did not specifically use the name, Perez, in making his statements to Rosemarie. The hearsay objection made by defendant to evidence of these two statements of Lopez was clearly sufficient to permit defendant to claim error on appeal. (See Evid. Code, § 353, subd. (a).)

It is to be noted that at the time Lopez made these two statements to Rosemarie, no evidence had been offered, nor was any evidence subsequently offered, to establish that at the time of the making of the statements, defendant and Lopez were engaged in any conspiracy to commit a crime of selling heroin to make evidence of the statements of Lopez admissible against defendant under the hearsay exception for the admission of a coconspirator—authorized by Evidence Code section 1223 and discussed subsequently herein.

### III

*The Question of the Admissibility, Pursuant to the Admission-of-a-coconspirator Exception to the Hearsay Rule Authorized by Evidence Code Section 1223, of Certain Hearsay Statements of Lopez to Rosemarie*

When defendant and Lopez reentered the Rosemarie vehicle after having spent approximately five minutes in defendant's home, Rosemarie drove her vehicle to the corner of Ruth and Castillo Streets and parked. Defendant left the vehicle, stating he was going to his cousin's house. Rosemarie testified that while she and Lopez were waiting in the vehicle for defendant to return, Lopez told her that defendant had previously asked him if he, Lopez, wanted defendant to "burn" her—meaning that he would purport to sell a narcotic substance which in fact would turn out to be a nonnarcotic substance. Rosemarie also testified that on this same occasion, Lopez requested that she keep quiet because defendant did not like people who talked too much.

The trial court overruled defendant's hearsay objection to Rosemarie's testimony as to these two hearsay statements made by Lopez. The People argue that the trial court properly admitted the evidence of the two statements of Lopez, pursuant to the admission-of-a-coconspirator exception to the hearsay rule, authorized by Evidence Code section 1223. Defendant asserts that this hearsay exception is not applicable to the statements of Lopez.

We are here dealing with *double hearsay*. Defendant's statements to Lopez are hearsay statements, and these statements are sought to be proved by the hearsay recital of these statements by Lopez to Rosemarie. The two statements of defendant to Lopez fall into the category of *implied* hearsay statements. The statement that defendant has asked Lopez if he, Lopez, wanted defendant to "burn" Rosemarie is being offered as an implied statement by defendant that he was prepared to supply heroin to Rosemarie, but would cheat her if Lopez so desired. Such an implied statement would constitute an admission by defendant, admissible under the exception to the hearsay rule for a party's statement offered against the party (Evid. Code, § 1220), tending to establish that defendant was the supplier of the heroin purchased by Rosemarie from Lopez.

The second statement that Rosemarie should keep quiet because defendant did not like people who talked too much constitutes an *implied* statement by defendant that he possessed heroin and was willing to sell it, but only to people whom he felt did not talk too much. Such an implied statement would also be relevant as an admission against defendant (Evid. Code, § 1220), as tending to prove that he possessed heroin to be supplied to Rosemarie.

If Lopez had testified *in court* that defendant had made these two statements to him, the statements would have been proved by the nonhearsay, in-court testimony of Lopez. But, here, the statements of defendant are sought to be established by the testimony of Rosemarie that Lopez told her of these two statements of defendant to Lopez. The extrajudicial statements of Lopez to Rosemarie as to what defendant had said to him are hearsay statements by Lopez reciting the hearsay statements of defendant and are inadmissible hearsay unless they qualify under some exception to the hearsay rule.

If, however, the hearsay statements of Lopez to Rosemarie come within some hearsay exception, they become admissible to establish the statements of defendant which qualify for admissibility under the exception to the hearsay rule for the admissions of a party authorized by Evidence Code section 1220.

The People argue that the hearsay statements of Lopez to Rosemarie satisfy the requirements of the hearsay exception for the admission of a coconspirator authorized by Evidence Code section 1223.

█ ˙A declarant's hearsay statement is admissible against a party as the admission of a coconspirator if (1) the statement was made by declarant while he was participating in a conspiracy to commit a crime or a civil wrong; (2) the statement was made in furtherance of the objectives of that conspiracy; and (3) the statement was made by a declarant either before or during the time that such a party also was participating in that conspiracy. The preliminary fact which must be established for admissibility of a declarant's statement under the admission-of-a-coconspirator exception to the hearsay rule is the existence of the conspiracy between the party and the declarant. Evidence offered to establish such conspiracy must simply be sufficient to sustain a finding of its existence.

In the discretion of the trial court, evidence of the declarant's statements, alleged to come within this exception, may be admitted before receipt of the evidence that the declarant and the party were engaged in a conspiracy, or subsequent to the introduction of evidence to establish the preliminary fact. (See Evid. Code, §§ 403, 1223, subd. (c).)

█ Defendant contends that the evidence presented by the prosecution was insufficient to establish the preliminary facts of the existence of a conspiracy between Lopez and defendant to authorize admissibility of

evidence of the hearsay statements of Lopez under the admission-of-a-coconspirator exception to the hearsay rule.

The admission-of-a-coconspirator hearsay exception, set forth in Evidence Code section 1223, is a type of authorized admission. The justification for the exception is that, by reason of the conspiracy between the declarant and a party, the party authorizes the coconspirator to do, and say, everything that would further the objectives of the conspiracy. Thus, the authority from a party to the declarant to speak about the subject of the conspiracy is derived from the fact of the existence of the conspiracy. Proof of the existence of the conspiracy constitutes proof of authorization to the declarant to speak in furtherance of the objectives of the conspiracy.

■ It is well established that the fact of the existence of the conspiracy between the declarant and the party against whom declarant's hearsay statement is offered may be established by circumstantial evidence, excluding, however, the declarant's hearsay statement. (See *People* v. *Lipinski* (1976) 65 Cal.App.3d 566 [135 Cal.Rptr. 451]; *People* v. *Earnest* (1975) 53 Cal.App.3d 734 [126 Cal.Rptr. 107].)

■ In the case at bench, the evidence established that, prior to the occasion when the statements in issue were made by Lopez to Rosemarie, Lopez had talked with defendant, the two had gotten into Rosemarie's vehicle and given directions to Rosemarie to drive to Bond Avenue where defendant stated he lived. Before leaving the vehicle, defendant asked Lopez: "Do you have the money?" After Rosemarie gave Lopez $115, Lopez and defendant got out of the vehicle and entered defendant's home and remained there for about five minutes. They returned to Rosemarie's vehicle and, subsequently, Lopez supplied Rosemarie with three balloons containing heroin.

This evidence was clearly sufficient to justify a finding by a reasonable trier of fact that Lopez and defendant had entered into a conspiracy to supply Rosemarie with heroin. The two statements of Lopez to Rosemarie, made prior to the actual transfer of the heroin from Lopez to her, as to what defendant had said about "burning" her and not liking to deal with people who talked too much, became admissible pursuant to the admission-of-a-coconspirator exception to the hearsay rule.

This evidence to establish the existence of the conspiracy in the case at bench is equally as strong as the circumstantial evidence held sufficient to

establish the foundational facts of the existence of a conspiracy found in *Lipinski* and *Earnest*. In *Earnest,* the evidence to establish the preliminary facts of the existence of the conspiracy was solely evidence of a prior inconsistent statement made by a witness whose testimony on the witness stand was not adverse to the defendant. But the prior inconsistent statements of the witness set forth that he had overheard a conversation between the defendant and an alleged coconspirator relating to a conspiracy to commit arson.

Thus, these two hearsay statements of Lopez to Rosemarie, because they satisfy the requirements of the admission-of-a-coconspirator hearsay exception (Evid. Code, § 1223), become admissible to establish the two hearsay statements made by defendant previously to Lopez regarding the "burning" of Rosemarie and the kind of persons with whom he would not deal, which satisfy the requirements of the admission-of-a-party exception to the hearsay rule. (Evid. Code, § 1220.)

The use of two or more exceptions to the hearsay rule to make double or multiple hearsay evidence admissible is authorized by Evidence Code section 1201, which provides: "A statement within the scope of an exception to the hearsay rule is not inadmissible on the ground that the evidence of such statement is hearsay evidence if such hearsay evidence consists of one or more statements each of which meets the requirements of an exception to the hearsay rule."

IV

*The Question of Whether There Is Error*
*Because of the Missing Tape*

There was testimony that the receiving device which the police officers used to receive conversations from the transmitting device taped to the chest of Rosemarie contained a built-in tape recorder. The prosecution failed to produce, for inspection by defendant, any tape which might have been in the recorder. Detective McLaughlin testified at the trial that the recording device was not working and that the tape did not record any of the conversations between Rosemarie, Lopez and defendant. McLaughlin indicated that after the transaction had been completed, the tape had been removed from the receiving instrument and had been placed in a recycling bin for cleaning and further use.

■ Defendant argues that, at the preliminary hearing, his trial counsel moved to dismiss the proceedings, or, in the alternative, to exclude the testimony of Rosemarie because of the destruction of the tape by the police, and that it was error for the magistrate to deny the motion. The defendant's contention is that the destruction of the tape deprived defendant of a fair trial because of potentially favorable evidence on the tape.

A crucial issue in the case at bench is whether defendant, while in the Rosemarie vehicle with her and Lopez, asked Lopez whether he had the money. The officers monitoring the conversations did not hear such a question asked, although Rosemarie testified that defendant did ask the question.

No motion was made by defendant in the superior court to set aside the information pursuant to Penal Code section 995 because of the failure of the magistrate to dismiss the proceedings or strike the testimony of Rosemarie. No motion was made by defendant in the superior court to suppress Rosemarie's testimony because of the prosecution's failure to produce the tape that was in the recording equipment during the transactions involved in the case at bench. It is the People's position that defendant is foreclosed from raising the point on this appeal because of his failure to move to suppress Rosemarie's testimony in the superior court and his failure to raise the point in the superior court by way of a motion pursuant to Penal Code section 995.

In *People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609], the court stated: "We hold that the failure to move to set aside the information (Pen. Code, § 995) bars the defense from questioning on appeal any irregularity in the preliminary examination (Pen. Code, § 996). We thereby follow a long line of decisions in both this court and the Courts of Appeal, uniformly holding that section 996 forecloses an attack on the preliminary examination in the absence of a motion under section 995." (Fn. omitted.) "[E]xcept in extraordinary circumstances, a litigant is not permitted to bypass a remedy in a lower court and reserve his grievance for submission to a higher court." (*Ramis* v. *Superior Court* (1977) 74 Cal.App.3d 325, 332 [141 Cal.Rptr. 374].)

Defendant relies upon *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], which held that law enforcement officials have a duty to preserve evidence when there is a reasonable possibility that it would constitute favorable evidence on the issue of guilt or innocence.

The *Hitch* court held that an intentional suppression of such evidence constitutes a violation of a defendant's due process rights, regardless of whether the suppression was done in good or bad faith.

Evidence presented at trial establishes that there was no intentional suppression of evidence which would come within the category of evidence having a reasonable possibility of constituting favorable evidence on the issue of defendant's innocence. Detective McLaughlin's testimony was undisputed that the recording device was not working and that the tape did not record any of the conversations between Rosemarie, Lopez and defendant. The saving and production of a blank tape could serve no useful purpose. The failure of the police to preserve the blank tape, therefore, was not a violation of the *Hitch* principles. In addition, Rosemarie's testimony that defendant asked Lopez whether he had the money was effectively contradicted by the testimony at trial of the officers who were monitoring the conversations that they did not hear any such question being asked.

## V

### *The Question of the Adequacy of Representation by Counsel*

 Defendant contends that he was deprived of his constitutional right to be represented by competent counsel. Defendant bases this contention primarily upon the fact that, upon direct examination of defendant as a witness, his trial counsel elicited from him the information that he had suffered a prior felony conviction of possession of heroin.

Before jury selection, the court engaged in a lengthy discussion with the prosecutor and defense counsel with respect to whether the prosecutor would seek to impeach defendant with evidence of the prior conviction in the event that defendant took the stand and testified as a witness. The court indicated that the evidence regarding the prior conviction might be so highly prejudicial that he would not allow its use for purposes of impeachment, but indicated that, before making any ruling, he would subsequently discuss the matter after the trial was underway.

There was no subsequent discussion or request by either the prosecutor or defense counsel for the court's ruling on the matter.

Defendant took the stand in his own defense. During the process of the direct examination of defendant by his counsel, the following testimony was elicited: "Q. Mr. Perez, I'm going to ask you a question, because the District Attorney is going to ask you this anyway: Have you ever been convicted of any felony? [¶] A. Yes, I have. [¶] Q. And what was that? [¶] A. Possession of heroin. [¶] Q. All right now, this case involves heroin also, sale of heroin. [¶] A. Yes, it does. [¶] Q. Did you have any involvement with this case in terms of doing anything with Mr. Lopez to cause him to have the heroin that was sold to Mrs. Ramos? [¶] A. No, I didn't. . . . [¶] . . . Q. When was that conviction? [¶] A. It was three years ago because I have been out of prison for twelve months or no—thirteen months."

Shortly after the cross-examination of defendant had begun, the court called both counsel to the bench and, outside of the hearing of the jury, stated: "I want to tell you a couple of things. First for your information, . . . I was not going to permit the conviction to be used. I was going to permit and I will permit, if necessary, any knowledge of heroin—maybe it isn't necessary now—under the two cases that were cited by counsel in his brief. So that is your prerogative: it was your decision in that regard. [¶] The other thing is that I want to put that on the record because I had not indicated at any time that I was going to permit the use of that conviction. I wanted to make that clear."

In response to the court's statement, counsel for defendant remarked: "I put in the prior because I figured that you were going to allow it, because I researched Beagle and for impeachment purposes, it is a recent prior that has to do with the same crime." The court then stated: "That is one of the reasons that I couldn't allow it. Under Rist and Beagle, I didn't feel that I could. However, it is in now."

It is clear that in eliciting from defendant as a witness the fact that he had suffered a prior conviction of the felony of possession of heroin, defendant's counsel introduced evidence which was likely to have a prejudicially devastating effect upon defendant's defense. Defendant was being tried for the crime of making a sale of heroin, and his counsel produced the impeaching fact of a prior felony conviction of a very similar offense that occurred only three years earlier.

The prior offense of possession of heroin is one which has practically *no probative* value for impeachment purposes, since it does not pertain to the character-impeaching traits of dishonesty or lack of veracity. The

great danger of prejudice lies in the recent conviction of a crime very similar in nature to that charged against defendant. As the trial court pointed out to defense counsel, the principles set forth in *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], mandated that the trial court exercise its discretion under Evidence Code section 352 and exclude evidence of such felony conviction.

The legal principles for determining the constitutional inadequacy of trial counsel's representation of a defendant are fairly well settled. The inadequacy complained of must be of substantial proportion and, because of such inadequacy, the trial must have been reduced to a " 'farce or a sham.' " (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; see also *People* v. *Reeves* (1966) 64 Cal.2d 766 [51 Cal.Rptr. 691, 415 P.2d 35].)

It is conceded, of course, that a trial without error is not the standard. (*In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921].) It is also acknowledged that an unfortunate choice of trial strategy by defense counsel will not, in and of itself, constitute an inadequacy that mandates a reversal of defendant's conviction. The principle was set forth in *People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64], that "[i]t is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [Citations.] [¶] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions *cannot be explained on the basis of any knowledgeable choice of tactics.*" (Italics added.)

■ A major tenet of the principle of a constitutionally inadequate representation by counsel is defined in terms of counsel's actions having the result of withdrawing from a case the adjudication of a crucial defense. "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled." (*Ibarra, supra,* 60 Cal.2d 460, 464.) It is to be noted that *Ibarra* does *not* hold that the "adjudication" of which a defendant has been deprived by the failure of counsel would result *inexorably* in a defendant's acquittal. It is the failure to have an appropriate *adjudication* of a defense that renders a defendant's trial fundamentally unfair—in violation of the constitutional due process rights guaranteed to a defendant.

In the case at bench, the crucial issue with respect to defendant's innocence or guilt centered around the respective credibility to be accorded Rosemarie as a witness contrasted with defendant as a witness. The conclusion is inescapable that defendant's credibility as a witness was effectively destroyed by his own counsel's use of the prejudicial evidence of the prior felony conviction for possession of heroin. The introduction of such evidence by defendant's counsel cannot be justified on any theory of a legitimate choice of trial tactics.

We conclude, therefore, that defendant was denied his constitutional right to adequate representation of counsel.

In view of our holding with respect to the issue of the defendant's constitutional right to adequate representation of counsel, we need not consider other issues raised by defendant.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 23, 1978.