336 S.E.2d 198

**STATE of West Virginia**

v.

**Robert Lee GOLDEN, Jr.**

**No. 16240.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1985.

Decided July 10, 1985.

Rehearing Denied Nov. 8, 1985.

Douglas A. Cornelius, Bridgeport, for appellant.

Janet Frye Steele, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Taylor County, entered June 14, 1983, which sentenced the appellant, Robert Lee Golden, Jr., to a term of life imprisonment as an habitual criminal after he was convicted of the crime of first degree sexual abuse, a felony. We find error in the appellant's underlying conviction, and we reverse the judgment of the circuit court on that ground.

The underlying felony charge arose from an incident which allegedly occurred on November 15, 1982. The appellant had just moved into a trailer located behind the home of his maternal grandmother, Mary Haller, in Philippi, Barbour County. The complainant, the appellant's twenty-year-old first cousin, lived nearby and had spent the afternoon shopping with Mrs. Haller, who was also her maternal grandmother.[1] The appellant and the complainant had not seen each other for several years when they met at Mrs. Haller's home on that afternoon. The cousins talked together for a while at Mrs. Haller's house and visited the appellant's mother, Betty Harris, who lived across the street, before going together to the appellant's trailer. The complainant asserted that while inside the trailer, the appellant attacked her and attempted,

1. Betty Harris, mother of the appellant, and Irene Thompson, the mother of the complainant, were sisters and the daughters of Mrs. Haller.

unsuccessfully, to force her to have sexual relations with him.

It appears that no complaint was immediately filed against the appellant. In February 1983, however, the complainant was subpoenaed to testify before the Grand Jury of Barbour County, which returned an indictment charging the appellant with first degree sexual abuse. The appellant's motion for a change of venue was granted on April 12, 1983, and the proceedings were removed to Taylor County.

At the appellant's trial, which began on May 2, 1983, the complainant's testimony as to what occurred inside the trailer was not contradicted by any direct evidence. There was substantial conflict among the witnesses, however, as to the demeanor and actions of the complainant after she left the trailer. The witnesses for the State, primarily the complainant, her mother and her father, testified that the complainant was upset and crying and accused the appellant of attempting to rape her. The witnesses for the defense, namely Betty Harris, Mrs. Haller and Rose Harris, the appellant's sister-in-law, testified that the complainant was calm and even gleeful after she left the appellant's trailer and made no complaint of an assault by the appellant until much later in the evening. Relying on these conflicts in the evidence, the defense attempted to show that the complainant had fabricated the charge against the appellant.

On May 4, 1983 the jury returned a verdict finding the appellant guilty. The State subsequently filed an information alleging that the appellant had twice previously been convicted of felonies,[2] and a trial on the recidivist charge was had before a jury on June 6, 1983. The appellant was found guilty, and, by order entered June 14, 1983, the circuit court sentenced him to a term of life imprisonment.

The appellant raises numerous assignments of error relating to his prosecution on the sexual abuse charge. We are primarily concerned, however, with certain evidentiary errors alleged to have been committed by the trial court. Specifically, the court allowed the State to introduce evidence of certain extrajudicial statements which the appellant asserts should have been excluded as hearsay.

The appellant first complains of certain testimony of Irene Thompson, the complainant's mother. The evidence showed that Mrs. Thompson had telephoned her daughter at Mrs. Haller's house several times on the day in question and asked the complainant to come home. Mrs. Thompson testified that when her daughter did not arrive, she had become apprehensive and had driven to the home of Mrs. Haller. Mrs. Thompson testified that when she arrived, Rose Harris came running down the street from Betty Harris' house in an excited state, approached Mrs. Thompson and told her that the appellant had tried to rape the complainant. Rose Harris testified at trial and denied having made any such statement to Mrs. Thompson.

Defense counsel objected to the introduction of this testimony on the ground that it was inadmissible hearsay. An *in camera* hearing was conducted at which the State asserted that the extrajudicial statement of Rose Harris was admissible as original evidence or, in the alternative, under the spontaneous declaration exception to the hearsay rule. The trial court allowed the testimony to come in on these grounds.

Clearly, if Rose Harris' extrajudicial statement was, in fact, hearsay, it was not admissible as a spontaneous declaration.

An alleged spontaneous declaration must be evaluated in the light of the following factors: (1) The statement or declaration must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not

---

**2.** The information alleged that he had been found guilty, upon guilty plea, of second degree murder in 1968, and that he was convicted, after a jury trial, of the crime of first degree sexual abuse in 1978.

the mere expression of an opinion; (4) it must be a spontaneous or instructive utterance of thought, dominated or evoken by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) *it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.* (Emphasis added.)

Syllabus point 2, *State v. Young,* 166 W.Va. 309, 273 S.E.2d 592 (1980). *See also State v. Ray,* 171 W.Va. 383, 298 S.E.2d 921 (1982); *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981); *Ward v. Raleigh County Park Board,* 143 W.Va. 931, 105 S.E.2d 881 (1958). The extrajudicial statement at issue here cannot be viewed as a spontaneous declaration because the declarant was neither a participant in nor a witness to the alleged assault upon the complainant.

 Moreover, Mrs. Thompson testified that Rose Harris was told of the alleged assault by Betty Harris who, in turn, had been told by the complainant. Consequently, the statement would constitute at least triple hearsay. The general rule is that multiple hearsay evidence is admissible into evidence only if each level of hearsay comes within a recognized exception to the exclusionary rule. *See* Fed.R.Evid. 805; *State v. McGann,* 132 Ariz. 296, 645 P.2d 811 (1982); *People v. Perez,* 83 Cal. App.3d 718, 148 Cal.Rptr. 90 (1978); *State v. Evans,* 169 N.W.2d 200 (Iowa 1969); *Commonwealth v. Gil,* 393 Mass. 204, 471 N.E.2d 30 (1984); *State v. Reagan,* 654 S.W.2d 636 (Mo.App.1983); *State v. Martinez,* 188 Mont. 271, 613 P.2d 974 (1980); *Boyer v. State,* 91 Wis.2d 647, 284 N.W.2d 30 (1979). *See also* W.Va.R.Evid. 805 (effective February 1, 1985). There was no evidence adduced to show that the other

levels of hearsay were admissible as exceptions to the hearsay rule. Accordingly, the statement, if hearsay, was clearly inadmissible.

However, not all extrajudicial statements constitute hearsay.

Hearsay has been defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c); *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974). On the other hand, a statement is not hearsay when it is used only to prove that the prior statement was made and not used to prove the truth of that statement. (Footnote omitted)

*State v. Greenlief,* 168 W.Va. 561, 285 S.E.2d 391, 394 (1981).

Where it becomes relevant to show that a certain statement or declaration was made, regardless of the truth or falsity of the statement or declaration itself, such proof is not hearsay and should be admitted. It is evidence of what, in some of the books, is termed a "verbal fact."

Syl.pt. 4, *State v. Corbin,* 117 W.Va. 241, 186 S.E.179 (1936). *See also State v. Gangwer,* 169 W.Va. 177, 286 S.E.2d 389 (1982); *Keller v. Wonn,* 140 W.Va. 860, 87 S.E.2d 453 (1955).

The State contends that Rose Harris' extrajudicial statement was not offered to prove the truth of the matter asserted, but rather, to show that the statement was, in fact, made. The evidence at trial showed that when Mrs. Thompson arrived at the home of Betty Harris, she was in an agitated state and created an emotional scene. The defense elicited testimony from members of the appellant's family to the effect that Mrs. Thompson was an excitable, domineering and overprotective mother and sought to demonstrate that Mrs. Thompson was angry because her daughter had not come home earlier in the day in response to her telephone calls. The theory of the defense was that the attempted rape charge was fabricated afterwards.

■ The State asserted that Rose Harris' extrajudicial statement was relevant, regardless of its truth or falsity, to explain Mrs. Thompson's behavior when she arrived at Betty Harris' home. We agree that the mere fact that the extrajudicial statement was made may have some relevance independent of the truth or falsity of the statement. However, in view of the fact that the statement went to the ultimate issue of case, the guilt or innocence of the appellant, we believe its prejudicial effect far outweighed its probative value and that it should have been excluded from evidence for that reason. *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). Accordingly, we hold that the circuit court erred in allowing Mrs. Thompson to testify as to Rose Harris' extrajudicial statement on either ground.

The appellant also asserts that the testimony given by Mrs. Thompson and by the complainant's father relating to the complainant's statement is to them constituted inadmissible hearsay evidence. Mrs. Thompson testified that when she first encountered the complainant at Betty Harris' house approximately 45 minutes after the alleged attack, her daughter told her "Bobby tried to rape me." Other witnesses who were present at the time asserted that the complainant made no such statement. The complainant's father also testified that approximately four hours after the alleged assault, the complainant had made a similar statement to him. Both Mrs. Thompson and the complainant corroborated this testimony. Other witnesses contradicted it. The trial court permitted all of this evidence to be heard by the jury on the theory that the complainant's statements were spontaneous exclamations or excited utterances and thus admissible under recognized exceptions to the hearsay rule.

■ We think it is evident that, under the above-cited rule, the extrajudicial statements attributed to the complainant cannot be considered spontaneous declarations. By the complainant's own testimony, she had escaped from her alleged assailant at least 45 minutes before she allegedly made the statement to her mother and four hours before she made the statement to her father. In the interim she had been in the company of her grandmother, to whom she asserts she made complaint, and her aunt. Although it is entirely possible that the complainant could still have been distraught at those times, we do not believe the evidence shows that the statements were "made at such time and under such circumstances as will exclude the presumption that [they were] the result of deliberation." Accordingly, we find error in the circuit court's admission of these statements.

■ We note that in a number of earlier cases, our Court has recognized a rule, unique to sex offense cases, that a witness for the State may testify to *the fact* of an out-of-court complaint by an alleged victim which is not part of the *res gestae* or a spontaneous declaration.

It is proper to show, as corroborative testimony, the fact that prosecutrix made complaint of the outrage soon after its commission, but the particulars and the name of the person alleged to have committed the act should be excluded [as hearsay]. *State v. Harrison*, 98 W.Va. 227, 127 S.E. 55 [1925]; *State v. Peck*, 90 W.Va. 272, 110 S.E. 715 [1922]; *Brogy v. Commonwealth*, 10 Grat. (51 Va.) 722 [1853]; 33 Cyc. p. 1463.

*State v. Straight*, 102 W.Va. 361, 362, 135 S.E. 163, 164 (1926). Here, however, the extrajudicial statements complained of included the appellant's name, a particular of the offense which constitutes hearsay and was not admissible under the prompt complaint rule. *State v. Friend*, 100 W.Va. 180, 130 S.E. 102 (1925).

■ Moreover, the rule is intended to allow corroboration of an alleged victim's testimony, since the unexplained failure to make a prompt complaint of rape may discredit her testimony. *See State v. Golden*, 90 W.Va. 496, 111 S.E. 320 (1922). Even though evidence of prompt complaint is particularly probative where there is an allegation that the charge was fabricated, to be admissible, such testimony must be introduced in rebuttal. *See State v. Dean*, 134 W.Va. 257, 58 S.E.2d 860 (1950). Mrs.

Thompson's testimony, arguably admissible to impeach the allegation of fabrication, was offered into evidence before the defense was raised at trial and should have been rejected at that time. The complainant's statement to her father was made after the defense alleges the charge was fabricated and was, therefore of little probative value.

In summary, we conclude that the trial court erred in allowing the State to introduce the extrajudicial statements discussed above. In view of the prejudicial nature of these statements, we are compelled to reverse the appellant's conviction and award him a new trial. Our decision on this ground makes it unnecessary for us to discuss the other assignments of error raised by the appellant.

Accordingly, and for the reasons stated herein, the judgment of the Circuit Court of Taylor County is reversed.

Reversed.

McHUGH and McGRAW, Justices, dissenting:

We believe that the majority opinion places too much emphasis on the technicalities of the hearsay rule and too little on the rationale behind it.

["]The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.["] *Chambers v. Mississippi,* 410 U.S. 284 at 298, 93 S.Ct. 1038 at 1047, 35 L.Ed.2d 297 (1973).

*State v. Williams,* 162 W.Va. 348, 353, 249 S.E.2d 752, 755 (1978). We do not believe that the rationale for excluding out-of-court statements was present in this case. In each instance cited by the majority opinion, the declarant was available and did, in fact, testify at trial. The appellant was afforded an opportunity to confront and examine the witness, and the jury was able to judge his or her demeanor.

Moreover, we do not believe that the out-of-court statements testified to by the prosecution on witnesses were inherently prejudicial. The defense made the credibility of these witnesses a principal issue at trial, and the State was entitled to offer corroborating evidence. Accordingly, we are of the opinion that the matter was properly submitted to the jury, and we would not reverse the appellant's conviction on the grounds relied upon by the majority.